### Borys' Case.
### Commonwealth ex rel. Conway et ux. *v.* Preston et ux., Appellants.

Argued December 16, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*E. Leroy van Roden,* of *van Roden & Lindenmuth,* with him *George H. Class,* for appellants.

*Henry Gouley,* with him *E. Herman Fuiman,* for appellees.

OPINION BY HIRT, J., February 28, 1942:

Both of these appeals are directed to the question of the proper placement and custody of Rudolph Borys, a 12 year old boy. Following the death of the only other child, his mother became insane and the present prospect is that she will continue to be confined in an institution for the rest of her life. The father died from accidental injury on May 28, 1941. Since the death of the father, Rudolph has been living in the home of appellants. They have been friendly neighbors of the Borys family for over nine years and are willing to maintain Rudolph in their home as a member of their family without reimbursement, if necessary, from the boy's estate. About one month after the father's death, the relatives of the boy at a conference, agreed that he should be placed with Helen Conway, (whose father's mother and Mrs. Borys were cousins) and her husband, and a writ of habeas corpus was issued at their instance. After hearing, the common pleas awarded custody of the child to them, and the orphans' court appointed them guardians of his person. In so disposing of the question, we think the hearing judge attached

too much importance to the so-called "ties of blood," to the exclusion of other more important considerations bearing directly upon the welfare of the child, and his best interests.

The rule in determining all disputes of this nature is that the best interests and permanent welfare of the child must control. "The guiding star for the court in coming to a conclusion in a case of this character, is the welfare of the child." To this all other considerations are subordinate. *Commonwealth ex rel. v. Daven,* 298 Pa. 416, 148 A. 524; *Commonwealth ex rel. v. Faxstein,* 84 Pa. Superior Ct. 243; *Commonwealth ex rel. v. Hoffman,* 91 Pa. Superior Ct. 213; 46 Corpus Juris, 1235 Section 15 (2). *Rumsey's Case,* 135 Pa. Superior Ct. 515, 7 A. 2d 43. In the present case the relatives who joined in the petition are an uncle, and three cousins, in some degree, of the child. The Conways had not seen the boy for more than two years and have seen him only a few times since his birth. The evidence is that the boy's father did not get on well with his relatives and there was no interchange of visits. After his accident, realizing the seriousness of his condition, the father gave the deed to his property, his bank books and insurance policies, not to one of his relatives, but to the appellants, for safekeeping.

There was no actual "tie of blood" between decedent and his relatives and the orders in these cases cannot rest on that ground alone. Moreover, the fact that the Conways are of the same religious faith as the father of the boy is not of controlling importance. The father was a nominal member of a Ukrainian Church of the Greek rite but, though he contributed occasionally, he seldom, if ever, attended church services. The mother went to church in Philadelphia at Christmastime and occasionally on other holidays. The boy was encouraged by his father to become a member of a protestant Episcopal Sunday School near his home,

which he has attended regularly for about three years. To interrupt this church connection would go contrary to the apparent desires of the boy's parents. The lower court did not stress the question of church affiliation as one of importance. The issue, therefore, is whether the welfare and permanent interests of the boy will be best served by placing him with the appellants or with a distant relative. Both the Conways and appellants are proper persons to be entrusted with the custody of a child.

The Conways live in a small rented house at 1113 Hamilton Street, in an industrial section of the City of Philadelphia. There are few children in the neighborhood and no playground facilities. The husband is employed by an electric company and earns $30 a week. Mrs. Conway is also employed, earning $18 a week. They have a nineteen months old child of their own which is cared for by Mrs. Conway's father, who lives nearby, during the day while she is at her work; the father is employed on a night shift. In the light of the fact that she is now entrusting her own child to the care of another, we do not place much confidence in her declared willingness to give up her job and remain at home and care for the boy without compensation for her loss of earnings.

Appellants have lived in the village of Essington in Tinicum Township for the past nine years. During all of that period the two families were friendly. Appellants have no children of their own but have adopted a child, now three years old. Their interest in Rudolph is of long standing. He was a frequent and welcome visitor in their home. The neighborhood has advantages in its favor. There is a large park nearby with playgrounds and a swimming pool for children. There are many children in the neighborhood. The Prestons are persons of intelligence, stability and character; their home is comfortably furnished; the husband has

had the same employment for seventeen years and his income is adequate. If appellants are awarded the custody of the boy, he will continue to attend the public school where he was placed by his parents. He is now in the sixth grade and is above the average in ability. The court's estimate of him is that "he is an emotional, and therefore a precocious child of very pleasing appearance and appealing manner." If so, there is all the more reason for congenial placement and intelligent guidance. The boy was called as a witness, and while he is too immature to decide for himself what is best for him, his testimony supports our conclusions from all of the testimony. His choice is to live with the Prestons near the home where he was born and in the neighborhood where all of his friends live. He takes pride in his school; he said: "We have just a little country school. It's mine." He testified that after his father was hurt the relatives "never came around to see how he was doing or what happened to me." Apparently there was no attempt to perpetuate a foreign language or customs and manners in the Borys home. Referring to his relatives, he said: "I have never been with them and I don't like their ideas ...... I have been born an American and I want to stay that way." Assuming that this idea is not entirely original with the boy, it is a forceful argument. He is a member of a Boys' Scout troop in the neighborhood and is active in a Boys' club. He is thoroughly adjusted to his environment and to his school where he is doing good work.

We are all of the opinion that the advantages from the viewpoint of the boy's permanent welfare are in favor of his placement with appellants. The boy, however, should be encouraged to develop and maintain a becoming attitude toward his relatives and they should be allowed to visit him at proper times.

The decree of the orphans' court is vacated and set aside.

The order of the court of common pleas is reversed and the custody of Rudolph Borys is awarded to appellants until further order of that court.

The costs to be paid by John P. Conway and Helen Conway, petitioners in the common pleas and by John Borys, petitioner in the orphans' court.