## Commonwealth ex rel. Gardner v. Eastman, Appellant.

Argued November 10, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (AR-NOLD, J., absent).

*Kenneth W. Rice,* for appellant.

*Raymond P. Shafer,* for appellee.

OPINION BY DITHRICH, J., January 20, 1953:

The contending parties in this child custody case are the father and the step-father of an eight-year-old boy. The learned president judge of the court below, after two extended hearings and "considerable reflection over a period of several weeks," finally concluded that the future interests of the child would be best served by awarding custody to his father. The order will be affirmed.

While in all appeals involving the custody of children we review the testimony, form our independent

judgment and make such order "as to right and justice belong," Act of July 11, 1917, P. L. 817, 12 PS §1874, we give considerable weight to the fact that where, as here, the parties are known to the court below, it has a better opportunity to pass upon their ability and fitness as parents than we have. *Commonwealth ex rel. Knouse v. Knouse,* 146 Pa. Superior Ct. 396, 22 A. 2d 618; *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 74 A. 2d 790.

Relator and the mother of the child were married in July, 1943, following a whirlwind courtship, while relator was in his senior year at Allegheny College in Meadville, Pa. The mother was then only seventeen years of age. They separated after three months of rather hectic married life. Part of the time they lived with the wife's parents in Meadville and part of the time with the father's parents in New Castle, Pa. They were living apart when the child was born March 13, 1944. The mother of the child divorced the father June 1, 1945, and on September 25, 1946, married respondent. She bore him two children, a girl now about five years of age and a baby girl now nine months of age. She died two weeks following the birth of the second child.

Relator was very neglectful of his child while his former wife was living with respondent, but promptly upon her death he brought this proceeding after consulting with the step-father of the child and finding that he would not agree to surrender him. After a careful review of the entire record we agree with and adopt the finding of the learned court below "that he now appears to have a desire to make up for his shortcomings in the past and assume full parental responsibility for his son." Following his separation from the mother of the child, he attended Harvard Divinity School and does not seem to have found himself until

he entered upon the study of law following his failure as a divinity student. He has done much better in the law and is presently employed in the legal department of the Erie Railroad in New York City and resides in suburban Glen Rock, New Jersey, with his wife and their two-year-old daughter.

Our decision to affirm the order of the court below is based in large measure on the testimony of three disinterested witnesses. David A. Lerch, an attorney and general land and tax agent for the Erie Railroad and himself the father of three children, one a boy the same age as the Gardner boy, testified that he has known Gardner three years, that they have lunch together almost daily, that he has frequently visited in his home and found it a very desirable place in which to rear a child. He further testified that Gardner has had two or three promotions since entering the employ of the railroad. His present salary is upwards of $6,000 a year.

John R. McFarland, Jr., executive secretary of Allegheny College since 1946, testified that during a fund-raising campaign in the fall of 1951 Gardner participated in the campaign in New York City. McFarland and his wife stayed in New York for three months while the campaign was on and in addition to seeing Gardner almost daily he and his wife spent an evening in the Gardner home, and had further opportunity of meeting and observing Mrs. Gardner when she attended an alumni meeting in New York. Mrs. McFarland, who first became acquainted with Gardner when he was enrolled in Allegheny College in the school year 1939-40 and who served as secretary to her husband during their stay in New York, in addition to testifying to the pleasant atmosphere and environment of their home which is equipped with all modern conveniences, testified to the favorable opinion she had

formed of Mrs. Gardner, a woman in her late twenties, as a mother and a housewife.

On the other hand, as observed by the court below, while the respondent has given the child "the care and training that a father should give . . . to the very best of his ability . . . [he] has been beset with difficulties in the management of his little home." It consists of a kitchen, living room, utility room and bath on the first floor and one large unpartitioned bedroom on the second floor. There is no tub or shower in the bathroom—the household being obliged to bathe in a wash tub—nor is there a cellar or basement. Eastman is employed as a crane operator on the night shift from 11 p.m. to 7 a.m. at the Westinghouse plant in Meadville, earning approximately $85 a week, and pays $15 a week to a housekeeper, a middle-aged woman with a husband and several children of her own, who looks after the boy and girl while Eastman is at work. Part of their time is spent with the maternal grandmother while the housekeeper is with her own family. She sleeps on a couch in the living room, while the boy and girl and the respondent occupy the bedroom. The baby is being cared for by respondent's sister-in-law in Erie, Pa.

In concluding that the welfare of the child would be best served by awarding custody to the father, the lower court said: "We have not reached this choice solely on the basis that he will have a more commodious home . . . [with] a parent whose income exceeds that of his step-father, . . . [but] the possibilities of his receiving great[er] educational opportunities seem . . . [better] than if he remains with his step-father." That in our opinion is a consideration of prime importance, especially in view of the exceptionally good record the boy has already made in grade school. He should be given every opportunity to continue his education.

In what we hold to be the leading case in point in this jurisdiction, we said, speaking through RENO, J., in *Commonwealth ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 562, 40 A. 2d 881: "Lacking prescience, the choice is always difficult. Nonetheless, we strive constantly to lay aside all other considerations, and to seek earnestly for that conclusion which will best serve the future interests and the permanent welfare of the child. This is the guiding star in formulating a decision. Com. ex rel. v. Daven, 298 Pa. 416, 148 A. 524. Because he is obligated by law to maintain and educate his children, a parent has the legal right to the custody of his child. This right is not absolute, but still it is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the child's welfare. Com. ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353. *Experience has shown that generally a child's welfare is best promoted by entrusting its future to its parents. This experience is the basis for the principle that prima facie the parent is entitled to custody, and from this rule we depart only when we are constrained by the most compelling reasons.* Com. ex rel. Keenan v. Thomas, 151 Pa. Superior Ct. 131, 30 A. 2d 246. . . ." (Emphasis added.) See also *Commonwealth ex rel. Swartzwelder v. Swartzwelder,* 162 Pa. Superior Ct. 366, 57 A. 2d 610; *Commonwealth ex rel. McDonald v. Smith,* 170 Pa. Superior Ct. 254, 85 A. 2d 686.

In our opinion the permanent welfare and future interests of the child will be best conserved by allowing the order of the lower court to remain undisturbed, at least for the present. It would have been better had the court below required the father to furnish bond before taking the child to his home in New Jersey, and the failure to do so may make it difficult for the court to enforce the right of visitation to the step-father pro-

vided in its order; but that is a matter within the sound discretion of the court below and is not controlling here. Cf. *Commonwealth ex rel. George v. George,* 167 Pa. Superior Ct. 563, 76 A. 2d 459.

The order is affirmed.