## Commonwealth ex rel. Morgan *v.* Smith, Appellant.

562

Argued November 15, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Samuel Kravitz*, with him *Melvin B. Goldstein*, for appellant.

*Joseph G. Feldman*, with him *Stephen M. Feldman*, and *Feldman & Feldman*, for appellee.

OPINION BY MR. JUSTICE JONES, April 16, 1968:

The primary issue on this appeal is whether, in the absence of sufficient legal evidence upon which to base a finding of paternity, a person, who maintained a meretricious relationship with the child's mother, can be found liable for the support of the child because he stood "in loco parentis" to the child?

In August 1946, Elizabeth Brooks entered into a lawful marriage with Clarence Morgan, a marriage never legally dissolved. After living together for about

four months, Morgan left his wife and disappeared.[1] Of that marriage the record does not reveal affirmatively the birth of any children. In 1948, Mrs. Morgan entered into a meretricious relationship with one George Smith, a relationship which lasted until 1965. During the time in which they lived together at various addresses in Philadelphia, Smith, a merchant seaman, by reason of his duties, was required to be absent for considerable periods of time.

On March 1, 1956, a male child was born to Mrs. Morgan to whom was given the name "George Smith, Jr." On the line indicated in the child's birth certificate for the signature of the child's father, Smith had signed his name. When the child was two years old, Smith said to Mrs. Morgan "Let's get married and give Geòrgie a good name." On July 1, 1959, Smith and Mrs. Morgan went through a marriage ceremony at Elkton, Maryland,[2] and, thereafter, continued to live together.

During the period within which Mrs. Morgan and Smith lived together, Smith contributed to the support of Mrs. Morgan and the child and paid for food, rent, clothing, medical bills, etc. On January 15, 1965, Smith stopped paying any support.

Mrs. Morgan, obviously at the behest of the relief authorities, instituted an action in the County Court of Philadelphia against Smith seeking support for the minor child. An examination of the petition, upon which this action is based, reveals that support is claimed from Smith *solely* on the theory that he was the father of the child and not upon any theory of

---

[1] Although Mrs. Morgan, at some unestablished time after 1946, heard that Morgan was in Washington, D. C., apparently Morgan has not communicated with his wife since 1946.

[2] At that time, each party falsely indicated that they had never been married.

"loco parentis". The record reveals no basis upon which the "in loco parentis" theory can be bottomed. The county court found that Mrs. Morgan had failed to produce competent legal evidence of nonaccess on the part of her lawful husband and that Mrs. Morgan's failure to produce proof of nonaccess prevented a finding that Smith was the father of the child. The court, however, stated: ". . . nevertheless, we are of the opinion that [Smith] stood in the position of 'in loco parentis' to this child and should continue to maintain and support him as he has done from the time of the child's birth, March 1, 1956, until January 15, 1965." Upon appeal from that support order, the Superior Court, by a 4-3 vote, affirmed the order. See: *Commonwealth ex rel. Morgan v. Smith*, 209 Pa. Superior Ct. 364, 228 A. 2d 6 (1967). To the majority *per curiam* opinion Judge HOFFMAN filed a dissenting opinion wherein Judge MONTGOMERY joined and Judge SPAULDING noted a dissent. The propriety of that order of the Superior Court is now before us.

We, initially, must direct our attention to the matter of procedure. The *sole* pleading before the court below was a printed form of petition partially filled in with handwriting but it was sufficient to meet the statutory requirement of a "petition, information, affidavit or any other legal document for the institution of support proceedings." (See: Act of July 13, 1953, P. L. 431, §§2, 5, 62 P.S. §§2043.31, 2043.35).

In his dissenting opinion, Judge HOFFMAN stated that he would reverse the county court "because it based its order on a finding that was neither alleged in the complaint nor made the subject of the court hearing. The sole issue at trial was whether [Smith] was the putative father. [Mrs. Morgan] did not suggest that [Smith] was liable for support because of the assumption of parental responsibility nor did [Smith]

defend on this issue. Indeed [Smith] did not testify at all, perhaps because he was secure in the knowledge that the presumption of access could not be overcome." The "in loco parentis" theory was adopted subsequent to the hearing, *sua sponte,* by the court itself.

In the posture in which this case was presented in the county court, we have no recourse other than to reverse this judgment. The phrase "in loco parentis" refers to a person who puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. Whether a person standing "in loco parentis" is liable for the support of a child is a matter not only of first impression in this Court but of great importance. However, as pointed out in the dissenting opinion, there is nothing on this record upon which to bottom a conclusion that Smith occupied the status of "in loco parentis" and, absent such evidence, we are not now in a position to properly pass upon this question.

Order reversed.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissent.