378 A.2d 879

**Mary Ann SPELLS**

v.

**Calhoun SPELLS, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1977.

Decided Oct. 6, 1977.

Richard A. Katz, York, with him Alan N. Linder, Pittsburgh, for appellant.

Raymond R. Smith, York, submitted a brief for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in denying his petition for visitation with his stepchildren. He also argues that the lower court erred by terminating the hearing prematurely. We agree with the latter contention and, therefore, reverse and remand for further proceedings consistent with this opinion.[1]

Appellant and appellee, who had two children fathered by another man, were married on January 23, 1971. No children resulted from the instant union. The children lived with appellee and appellant for seven or eight months prior to the marriage and for its duration. On July 5, 1973, the parties separated, and on September 5, 1973, appellee filed a complaint in divorce based upon indignities to the person. The contested divorce has not yet been granted. On October 20, 1975, appellant filed a petition in the York County Court of Common Pleas to request that he be permitted to visit his stepchildren, Sherry Keeney, age 8, and Lionel Keeney, age 12. On January 6, 1975, the lower court conducted a truncated hearing on appellant's petition. During the cross-examination of appellant, the court terminated the hearing and did not permit appellee to present any evidence. Immediately thereafter the court stated, *inter alia:*

"This Court is unaware of any authority which would grant the step-father standing to claim visitation rights. However, we recognize that the rules in this area are changing and being abandoned as the Court seeks the best interests of the child under all the facts of each particular case. We assume for purposes of this Order that Petitioner is not precluded by the absence of any relationship with the children; however, granting him standing does not eliminate

1. Because the record is incomplete, we cannot make a determination of the first contention.

the fact that the absence of such relationship exists and must be considered as we analyze the other facts here present.

"The parties separated approximately 2½ years ago. Testimony indicates that the Petitioner kept the children for approximately two days, at which time Children's Services took them, against his will, and he saw them one time shortly thereafter for approximately one hour. This is a striking absence of contact. We will not construe it as indicating a lack of interest. Petitioner states that threats were made about lawyers blocking his right to see the children and so forth, which may be justification for failure to pursue this heretofore, but lack of interest or not, the fact remains that the children have not seen the Petitioner for well over two years.

"While we do not doubt Petitioner's statements that he cares for these children and wants to see them, we cannot avoid some sense of feeling that the children are to an extent pawns in an ongoing continuing struggle between the parties. Feelings remain intense and hostility obviously exists . . .."

Subsequent to the filing of the instant appeal, the lower court issued a memorandum opinion in which it stated:

". . . In brief, we ruled that a stepfather has no right of visitation and that his lack of contact with the child in the past strongly suggested that it was in the interests of the child to deny the request.

"As we now review this matter, we note that we did not give Respondent an opportunity to call the numerous witnesses she had in Court nor an opportunity to fully cross-examine Petitioner, as it seemed to the Court obvious that the Petition should be denied. If Appellate Courts should disagree, we suggest that the matter should be remanded for a full hearing as the present record is not adequate for the entry of an Order which would finally resolve the matter. . . ."

■ Initially, appellant contends that a stepfather is not precluded as a matter of law from visiting his stepchildren who are in the custody of their natural mother. It is our belief that a stepfather may not be denied the right to visit his stepchildren merely because of his lack of a blood relationship to them. Clearly, a stepfather and his young stepchildren who live in a family environment may develop deep and lasting mutual bonds of affection. Courts must acknowledge the fact that a stepfather (or stepmother) may be the only parent that the child has truly known and loved during its minority. A stepparent may be as devoted and concerned about the welfare of a stepchild as a natural parent would be. Rejection of visitation privileges cannot be grounded in the mere status as a stepparent.

■■ Pennsylvania courts recognize that a person may "put himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. This status, [known as 'in loco parentis'] embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties." *Commonwealth ex rel. Morgan v. Smith*, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). "The rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child." *Commonwealth v. Cameron*, 197 Pa.Super. 403, 407, 179 A.2d 270, 272 (1962); *Young v. Hipple*, 273 Pa. 439, 117 A. 185 (1922). A stepfather who lives with his spouse and her natural children may assume the status 'in loco parentis'. We may expect that a bond will develop between stepparent and stepchild; we, therefore, should protect that relationship by conferring rights of visitation. The departure of a stepfather from the home would no more destroy the love and affection between stepparent and child than it would in the case of a natural child. *Young v. Hipple, supra.* Whether appellant stood in loco parentis to his stepchildren is a relevant factor which the lower court should consider. However, it is not apparent in the instant case whether the

court did so, because the record before us is inadequate to determine that issue.

■ Case law is clear that "the guiding star for the court in coming to a conclusion [in a child custody case] is the welfare of the child. To this the rights of parents and all other considerations are subordinate." *Commonwealth ex rel. Barnett v. Currie,* 165 Pa.Super. 477, 479, 69 A.2d 154, 155 (1949); *Commonwealth ex rel. Conway v. Preston,* 148 Pa.Super. 182, 24 A.2d 772 (1942). More recently, Pennsylvania courts have restated the principle as follows: The paramount concern in a child custody contest between parents is the best interests and welfare of the child, which includes consideration of his physical, intellectual, moral, and spiritual well-being. *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976); *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972).

Numerous child custody contests have arisen between natural parents or blood relatives, and nonparents or stepparents. The courts have consistently viewed the matter with relation to the best interests and welfare of the child. In *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa.Super. 167, 138 A.2d 225 (1958), the natural mother, the stepmother, and the natural father each wished to obtain custody of the minor child. In awarding custody to the stepmother, the court looked to the particular facts of the case and found that the rights of the natural parents must yield to the best interests of the child. In other instances in which the dispute was between a blood relative or natural parent and a nonparent or stepparent, our courts have consistently held that the applicable standard is the best interests of the child. *Davis Appeal,* 237 Pa.Super. 516, 352 A.2d 78 (1975); *Commonwealth ex rel. Gardner v. Eastman,* 172 Pa.Super. 496, 94 A.2d 175 (1953); *Commonwealth ex rel. Barnett v. Currie, supra; Commonwealth ex rel. Conway v. Preston, supra; Commonwealth ex rel. Appellant v. Wilcox,* 118 Pa.Super. 363, 179 A. 808 (1935); See also, *Stapleton v. Dauphin Co. Child Care Serv.,* 228 Pa.Super. 371, 389, n. 7, 324 A.2d 562,

572, n. 7 (1974); Act of June 26, 1895, P.L. 316, § 2; 48 P.S. § 92 (65).[2]

Whether a stepfather should be permitted to visit his stepchild who is in the custody of the mother has not been considered extensively. In *Commonwealth v. Rozanski*, 206 Pa.Super. 397, 400, 402, 213 A.2d 155 (1965), our Court addressed the issue of awarding visiting privileges to the putative father when his illegitimate child is in the custody of the mother. We stated: "[I]n any case involving visitation, neither the fact of illegitimacy nor the personal preferences or prejudices of the parents should control our decision. *The governing criterion must always be the welfare and best interests of the child. . . .*

"To state as a matter of law that the visits of a putative father are always detrimental to the illegitimate child's best interests is to exalt rule over reality. This approach ignores the growing recognition in our courts, and in courts throughout the nation, of the need to determine the welfare of each child in light of his own particular needs and circumstances.

"The putative father may, in many instances, instill in the child a sense of stability. He may develop qualities in the child which the mother is uninterested, unwilling or incapable of developing. To the extent that he can perform such a valuable service, his presence becomes exceedingly important. Certainly, to the illegitimate child, the father is never putative.

"We recognize that granting visitation privileges to the putative father may not always serve the child's best interests. Visitation rights, however, are always a matter for the supervision of the courts. Should it appear, after visitation privileges have been granted, that the father's presence has

**2.** Section 92 provides: "In all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child."

an adverse effect on the child's welfare, the right to visit may be withdrawn." (Emphasis in original).

We note that courts rarely deny non-custodial, natural parents the opportunity visit their children. "The cases in which visitation rights have been limited or denied have been those in which severe mental or moral deficiencies of the parent have constituted a real and grave threat to the welfare of the child." *Commonwealth ex rel. Lotz v. Lotz*, 188 Pa.Super. 241, 244, 146 A.2d 362, 363 (1958). Courts have awarded visitation privileges to non-custodial parents when the parent has waited several years to assert his rights, *Fernald v. Fernald*, 224 Pa.Super. 93, 302 A.2d 470 (1973); *Commonwealth ex rel. Turner v. Strange*, 179 Pa.Super. 83, 115 A.2d 885 (1955); when the parent engaged in a meretricious relationship, *Commonwealth ex rel. Sorace v. Sorace*, 236 Pa.Super. 42, 344 A.2d 553 (1975); and even when the evidence revealed marital misconduct and excessive drinking of intoxicating beverages in the children's presence. *Commonwealth ex rel. McNamee v. Jackson*, 183 Pa.Super. 522, 132 A.2d 396 (1957). Thus, it is clear that visitation rights of a parent not in custody must be carefully guarded. Further, it is against public policy to limit or destroy the relationship of parent to child. *Commonwealth ex rel. Lotz v. Lotz, supra; Commonwealth ex rel. Sorace v. Sorace, supra.* Accordingly, when a stepparent is "in loco parentis" with his stepchildren, courts must jealously guard his rights to visitation. Of course, the paramount concern in any child custody or visitation dispute is the welfare and best interests of the child. But the hearing court must permit a stepparent to establish what his relationship to the child is and to demonstrate that his interest in visitation should be protected.

In cases of child custody and visitation our scope of review is broad and requires independent examination of the evidence before reaching our conclusion. We cannot, however, nullify the fact-finding function of the hearing judge. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *Davidyan v. Davidyan*, 230 Pa.Su-

per. 599, 327 A.2d 145 (1974); *Auman v. Eash*, 228 Pa.Super. 242, 323 A.2d 94 (1974). Nor need we accept a finding which has no competent evidence to support it, "[we must] make an independent judgment based on the evidence and testimony and make such order on the merits of the case as to do right and justice." *Davidyan, supra,* 230 Pa.Super. at 603, 327 A.2d at 147; *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973); *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972).

In the instant case, the lower court failed to conduct a complete hearing on appellant's petition. Because it cut-off the cross-examination of appellant and refused to permit appellee or her witnesses to testify, the relevant facts are not before us. In fact, in its memorandum opinion, the court specifically recommended that the case be remanded for a full hearing should our Court disagree with its disposition. Therefore, we are unable to determine what disposition would be in the best interests of the two children.

We reverse and remand to the lower court for further proceedings consistent with this opinion.

SPAETH, J., concurs in the result.