278 Pa. Superior Ct. 343 (1980)
420 A.2d 572
COMMONWEALTH of Pennsylvania ex rel. PATRICIA L.F.
v.
MALBERT J.F., Jr.
Appeal of PATRICIA L.F.
Superior Court of Pennsylvania.
Argued March 21, 1980.
Filed May 30, 1980.
*344 Paul C. Hensel, Bethleham, for appellant.
Thomas J. Fischer, Bethleham, for Commonwealth, appellee.
Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, WICKERSHAM and HOFFMAN, JJ.
HOFFMAN, Judge:
Appellant contends that the lower court erred in awarding custody of her two natural children to appellee. For the reasons which follow, we reverse and remand for further proceedings consistent with this opinion.
Appellant is the natural mother of M., born in March, 1972, and of P., born in May, 1973. Appellee is the stepfather of M. by virtue of his marriage to appellant,[1] and he is the natural father of P. In March, 1977, appellant and appellee separated. In July of that year, appellant petitioned the lower court to secure custody of the children, who were residing with appellee. After a hearing the lower court denied appellant's petition and ordered that the children remain in appellee's custody subject to "generous visitation privileges" in appellant. From that order, appellant now appeals.
Appellant first contends that the lower court erred in allocating the burden of proof with respect to M.'s custody *345 as if the dispute were between two natural parents.[2] The court's basic inquiry in child custody cases focuses upon the best interest of the child. Bedio v. Bedio, 268 Pa.Super. 231, 407 A.2d 1331 (1979). See also Kriss v. Kriss, 272 Pa.Super. 383, 416 A.2d 92 (1979); Kessler v. Gregory, 271 Pa.Super. 121, 412 A.2d 605 (1979). "In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. In re Custody of Hernandez, 249 Pa.Super. 274, 376 A.2d 648 (1977)." Lewis v. Lewis, 267 Pa.Super. 235, 240, 406 A.2d 781, 783 (1979). Where, however, a parent and a third party dispute the custody of a child, "the manner of inquiry is more complex." In re Custody of Hernandez, supra, 249 Pa.Super. at 286, 376 A.2d at 654. Although the best interest of the child remains of paramount concern, the parent has "a `prima facie right to custody,' which will be forfeited only if `convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parent['s] side." Id. See also Commonwealth ex rel. Witherspoon v. Witherspoon, 252 Pa.Super. 589, 384 A.2d 936 (1978).
Prior cases have, without discussion, treated stepparents as unrelated third parties in custody disputes. See Auman v. Eash, 228 Pa.Super. 242, 323 A.2d 94 (1974); Commonwealth ex rel. Kraus v. Kraus, 185 Pa.Super. 167, 138 A.2d 225 (1958); Commonwealth ex rel. Grue v. Sanford, 183 Pa.Super. 32, 127 A.2d 800 (1956); Commonwealth ex rel. Gardner v. Eastman, 172 Pa.Super. 496, 94 A.2d 175 (1953). Auman, for example, involved a custody dispute which arose after the death of the natural mother between the natural *346 father and the stepfather with whom the child had lived for almost two years. In affirming the lower court's award of custody to the natural father, the majority stated that the right of a natural parent to custody "is so moving and cogent that as against a third party seeking custody it can be forfeited only by his conduct or other factors substantially affecting the child's welfare." 228 Pa.Super. at 245, 323 A.2d at 96. Similarly, Hernandez indicates that anyone other than a natural parent is to be considered a third party in a custody dispute. While we therein noted that "there are two distinct categories of `third parties': relatives and nonrelatives," we concluded that to draw a distinction between the burden of proof allocated to each would be "to indulge in over-refinement." 249 Pa.Super. at 287, 376 A.2d at 654. This dictum has been adopted in several of our later custody cases which classify grandparents as third parties under the Hernandez standard. Commonwealth ex rel. Fetters v. Albright, 266 Pa.Super. 583, 405 A.2d 1260 (1979); Hooks v. Ellerbe, 257 Pa.Super. 219, 390 A.2d 791 (1978); Ramos v. Rios, 249 Pa.Super. 487, 378 A.2d 400 (1977). See also Commonwealth ex rel. Witherspoon v. Witherspoon, supra.
Acknowledging this precedent, appellee contends that he should not be treated as a third party under the Hernandez standard because he stood "in loco parentis" to M. "The phrase `in loco parentis' refers to a person who puts himself in the situation of a lawful parent by assuming obligations incident to the parental relationship without going through the formality of a legal adoption." Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). Anyone can assume in loco parentis status: a putative father, a paramour, or a school. See, e.g., Guerrieri v. Tyson, 147 Pa.Super. 239, 24 A.2d 468 (1942) (school teachers stand in loco parentis to pupils). Surely we would not accord the aforementioned parties custody rights equal to those of a natural parent simply by virtue of their in loco parentis standing. Similarly, here, it would be unreasonable to treat appellee as a natural parent based solely on the fact that he stands in loco parentis to M.
*347 Spells v. Spells, 250 Pa.Super. 168, 378 A.2d 879 (1977), cited by appellee in support of his contention, is inapposite because that case dealt with visitation rights rather than custody. In Spells we held that the lower court erred in perfunctorily denying a stepparent visitation without a full hearing. It is clear that "an order granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody." Commonwealth ex rel. Williams v. Miller, 254 Pa.Super. 227, 230, 385 A.2d 992, 994 (1978). Accordingly, in Miller, we established a standard for determining whether visitation privileges would be accorded to third parties which, although similar to the Hernandez standard, requires a less exacting showing by the third party. Id. Moreover, the considerations relevant to the determination of visitation privileges differ from those which are relevant to the determination of custody. See, e.g., Scarlett v. Scarlett, 257 Pa.Super. 468, 390 A.2d 1331 (1978). Thus, rather than focusing solely on the best interests of the child, the court will not deny a parent visitation rights unless the "parent has been shown to suffer from severe mental or moral deficiencies" which pose "a grave threat to the child." Id., 257 Pa.Super. at 472, 390 A.2d at 1333. The other case relied upon by appellee for his proposition that those in loco parentis should be treated as natural parents is equally inapposite. Commonwealth, Dept. of Transportation, Bureau of Traffic Safety v. Stuart, 2 Pa. 294, 276 A.2d 583 (1971) (consent of one in loco parentis to minor's driver's license).
We conclude that the lower court erred in treating appellee as if he were M.'s natural parent in awarding custody to him. The clear meaning of Hernandez and its progeny is that anyone not a natural parent must be treated as a third party in a custody dispute.[3] Earlier cases do not mandate different treatment for those in loco parentis nor do we deem it advisable now to create such a rule. Accordingly, we reverse the order awarding custody of M. to appellee and *348 remand to the lower court for proper application of the Hernandez standard, treating appellee as a third party. Moreover, reexamination of M.'s custody in the proper light will alter the considerations relevant to the determination of P.'s custody. In particular, the lower court must consider the interplay of the policy favoring maintaining siblings in the same household and the prima facie right of the natural parent to custody as it applies to this case. See Commonwealth ex rel. Fetters v. Albright, supra (policy of keeping siblings together was not a sufficiently convincing reason to deprive natural parent of custody). Accordingly, we remand the entire case for reevaluation in light of the principles of law set forth in this opinion.
Order reversed and case remanded for reconsideration in accordance with this opinion.
PRICE, J., files a dissenting opinion, in which HESTER and WICKERSHAM, JJ., join.
PRICE, Judge, dissenting:
The instant appeal is taken from the order of the court of common pleas granting custody of two children, M., age seven, and P., age six, to appellee Malbert J.F., Jr. Appellee is P.'s natural father and M.'s step-father. The majority concludes that the court of common pleas applied an erroneous standard in deciding the issue of custody and therefore reverses the order of that court and remands the case. For the reasons set forth herein, I dissent.
The pertinent facts are as follows. M., a male, was born to appellant in January of 1972. At that time, appellant was unmarried, and the identity of M.'s natural father was indeterminable. P., a female, was born to appellant in May of 1973. Appellee is P.'s natural father, and her birth took place approximately one week before appellant and appellee were married. Although appellee never adopted M., the child used appellee's surname following the wedding. From the time of their marriage, appellant and appellee lived with appellee's parents, who helped care for the children.
*349 Domestic discord developed shortly before appellant assumed a position as housekeeper to Mr. and Mrs. Reuben Arnold and their seven children in March of 1977. During a weekend in early March, when Mr. Arnold was away on business, appellant stayed at the Arnold residence and assisted the disabled Mrs. Arnold in caring for the seven children. Subsequent to appellant's return to her in-laws' residence, a dispute occurred between her and her father-in-law, which culminated in appellant's move, with her son,[1] into the Arnold residence. On the next day, appellee removed M. from the Arnold premises, and custody of both M. and P. has remained with him since that day.
Appellant instituted habeas corpus proceedings in July 1977, and a rule was entered directing appellee to show cause why the custody of the two children should not be granted to appellant. A hearing was held before the court of common pleas on October 17, 1977, and additional testimony was taken on November 7, 1977. The hearing court found that appellant and appellee were in similar financial situations,[2] and were both technically capable of providing adequate care for the children. The court concluded, however, that the best interests of the children would be served by placing their custody in appellee's hands. There were several considerations the court cited to support this result.[3] *350 Appellant made no request for custody of the children between March and July 1977, and she visited the children infrequently during that time. The living quarters available to the children at the Arnold residence would be quite cramped. The residence is half of a duplex, with four bedrooms. Appellant testified that Mr. and Mrs. Arnold occupy one bedroom, three female children use the second bedroom, two boys use the third, and appellant and the Arnolds' youngest child, a two-year-old, use the remaining bedroom.[4] Had appellant obtained custody of M. and P., M. would have slept with the two boys in one bedroom, and P. would have slept with appellant and the Arnolds' youngest child in appellant's bedroom. The nearest playground to the Arnold residence is approximately one-half mile distant.
The home of appellee's parents, on the other hand, is a single residence providing more spacious facilities. P. has her own bedroom, and appellee and M. share a bedroom. A playground is located across the street. The court concluded that the Fritz residence was supportive, warm and conducive to proper development, and that the children had established a stable relationship there with appellee. The court also made note of the fact that appellee's parents had helped raise the children and provided care to them that was more than satisfactory.
The scope of review of an appellate court is very broad in custody cases. Commonwealth ex rel. Spriggs v. Carson, 470 Pa. 290, 368 A.2d 635 (1977); Jones v. Kniess, 249 Pa.Super. 134, 375 A.2d 795 (1977); Cheppa v. Cheppa, 246 Pa.Super. 149, 369 A.2d 854 (1977). However, this power is not without its limitations. This court will not nullify or usurp the fact-finding function of the lower court. The credibility of the witnesses and weight to be given their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom *351 they appear. Commonwealth ex rel. Spriggs v. Carson, supra; Commonwealth ex rel. Harry v. Eastridge, 374 Pa. 172, 97 A.2d 350 (1953); Jones v. Kniess, supra.
"[The hearing judge] alone had the opportunity to see and hear the witnesses in this case, and therefore had the better opportunity to pass upon their demeanor and character. These are qualities which cannot be divined from the mechanistic reading of a cold record. It is these factors which must therefore be accorded great weight by a reviewing court." Commonwealth ex rel. Spriggs v. Carson, supra, 470 Pa. at 298, 368 A.2d at 639.
Because the trial judge is in the better position to evaluate the attitudes, sincerity and demeanor of the witnesses, we have held that absent a gross abuse of discretion, an appellate court should not interfere with the decision of the hearing judge. Jones v. Kniess, supra.
The primary consideration in any child custody proceeding is to determine the best interests of the children. "Best interests" include not only the children's physical well-being, but also their intellectual, spiritual, and moral well-being. Commonwealth ex rel. Cutler v. Cutler, 246 Pa.Super. 82, 369 A.2d 821 (1977); Commonwealth ex rel. Pruss v. Pruss, 236 Pa.Super. 247, 344 A.2d 509 (1975). In reviewing the best interests of the children, I will consider each child separately.
Appellant and appellee are the natural parents of P., and therefore, the standard used in assessing her best interests is a balancing test. The burden of proof is shared equally by the contesting parents, and custody is awarded to that parent in whose favor the scale tips based on a preponderance of the evidence. See In re Custody of Hernandez, 249 Pa.Super. 274, 376 A.2d 648 (1977). In the instant case, although the court below found both parents to be equally fit, this is not equivalent to a finding that the best interests of the child would be equally served with either parent. Commonwealth ex rel. Cutler v. Cutler, supra. Indeed, the court below found that the child's best interests would be served by awarding custody to appellee. After a review of *352 the record, I am convinced that the evidence presented supports the lower court's conclusion.
P. has lived with appellee in his parents' home practically all of her life. We previously have recognized the importance to a child's development of a stable relationship with an established parental figure and a known physical environment. Pamela J.K. v. Roger D.J., 277 Pa.Super. 579, 419 A.2d 1301; Haraschak v. Haraschak, 268 Pa.Super. 173, 407 A.2d 886 (1979); Commonwealth ex rel. Cutler v. Cutler, 246 Pa.Super. 82, 369 A.2d 821 (1977). "[W]here the child's parents are equally fit, or nearly so, as in the present case, the fact that a stable, long-continued and happy relationship has developed between the child and one of the parents may be of critical importance to the formulation of an appropriate custody decree." Pamela J.K. v. Roger D.J., supra, 277 Pa.Super. at 593, 419 A.2d at 1307. In the instant case, for the past seven years P. has lived in her paternal grandparents' home with her father, half brother and grandparents. Her grandparents, whom she refers to as "mammy" and "pappy" (N.T. 65) have helped care for her since birth. The lower court found them to be supportive and an important factor in creating a warm home environment. The physical facilities of her grandparents' home provide P. with an atmosphere, as found by the hearing judge and with which I agree, that is more beneficial than the cramped quarters she would be subjected to at the Arnold residence.[5] To award custody of P. at this time to appellant would greatly disrupt the stable home environment which has been established over the course of the past seven years. Taking all of these factors into consideration, I agree with the hearing judge that the preponderance of the evidence tips the balance in favor of finding that P.'s best interests would be served by awarding custody to her father, appellee.
*353 With respect to the custody of M., appellant contends that the test to be employed is that enunciated by this court in the case of In re Custody of Hernandez, supra, wherein we stated that in custody cases between a natural parent and a third party, the formula employed affords the natural parent a prima facie right to custody that will be forfeited only if the record demonstrates "convincing reasons" that the child's best interests will be served by awarding custody to the third party. Because appellee is not the natural father of M., appellant maintains that he should be classified as a third party under the Hernandez formula, with the burden of presenting "convincing reasons" to prove that M.'s best interests would be served by awarding his custody to appellee. I would hold that the Hernandez formula with respect to third parties does not apply to appellee. I perceive two overriding considerations. First, appellee does not properly fit within the meaning of a third party as contemplated by this court in Hernandez. Although he did not go through the formalities of adopting M., appellee assumed the status of "in loco parentis." The rights and liabilities arising out of that relation are exactly the same as between parent and child. Spells v. Spells, 250 Pa.Super. 168, 378 A.2d 879 (1977); Commonwealth v. Cameron, 197 Pa.Super. 403, 179 A.2d 270 (1962).
"Pennsylvania courts recognize that a person may `put himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. This status, [known as "in loco parentis"] embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties.' Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). `The rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child.' Commonwealth v. Cameron, 197 Pa.Super. 403, 407, 179 A.2d 270, 272 (1962); Young v. Hipple, 273 Pa. 439, 117 A. 185 (1922). A stepfather who lives with his spouse and her natural children may assume the status `in loco parentis'. We may expect that a bond will develop *354 between stepparent and stepchild; . . ." Spells v. Spells, supra 250 Pa.Super. at 172, 378 A.2d at 881-82.
The majority partially quotes a passage from In re Custody of Hernandez, supra, for the proposition that no distinction in the burden of proof should be drawn between categories of those persons who are not the natural parent of the subjects of a custody dispute. The passage in full reads as follows:
"However, to draw a distinction in the burden of proof allocated to one category as compared with that allocated to the other would be to indulge in over-refinement, which would distract the inquiry from the essential concern of the case-the child's best interest." Id. 249 Pa.Super. at 287, 376 A.2d at 654-55. (footnote omitted).
Yet, the majority, by applying third-party status to appellee, achieves a result in the instant case that is contrary to the recognized "essential concern" of any custody case-the child's best interests.
The second overriding consideration that I perceive is the strong policy that favors keeping siblings in the same household whenever possible, unless compelling reasons dictate a contrary result. See Commonwealth ex rel. Steuer v. Steuer, 244 Pa.Super. 302, 368 A.2d 732 (1976); In re Custody of Myers v. Needham, 242 Pa.Super. 225, 363 A.2d 1242 (1976); Commonwealth ex rel. Bowser v. Bowser, 224 Pa.Super. 1, 302 A.2d 450 (1973). The fact that P. and M. do not share a common father is of no consequence. The policy applies with equal force. Pamela J.K. v. Roger D.J., supra; In re Custody of Myers v. Needham, supra. Additionally, as was previously discussed with respect to the custody of P., an award to appellant of the custody of M. would greatly disrupt the stable relationship developed with appellee in his grandparents' home over the past seven years. I agree with the court below that the best interests of the children would be served by their being raised together, and I discern no compelling reasons of record to dictate a contrary result.
I, therefore, would hold that the lower court's findings are supported by competent evidence, and based upon our responsibility *355 of broad review, I would affirm the lower court's order which concludes that the best interests of the children would be served by an award of custody to appellee.
HESTER and WICKERSHAM, JJ., join.
NOTES
[1] Although M. uses appellee's surname, appellee never sought to adopt him.
[2] Preliminarily, we note that the lower court relied in part upon an alleged stipulation between the parties that the children should remain together regardless of who was awarded custody. Both parties contest the existence of that stipulation, and indeed, no such stipulation appears on the record. Accordingly, the lower court erred in relying on a stipulation not of record. See Pa.R.Civ.P. 201. See also Commonwealth ex rel. Veihdeffer v. Veihdeffer, 235 Pa.Super. 447, 344 A.2d 613 (1975) (court not bound by contractual agreement between the parties relating to custody).
[3] We do not determine, however, whether adoptive parents are to be treated as natural parents in custody disputes.
[1] Appellant also desired to take P. with her, but P. had been removed from the premises by her father-in-law.
[2] Appellee was unemployed and on welfare payments of $302 a month. Appellant received a salary of approximately $25-30 a week from the Arnolds in addition to room and board in the Arnold residence.
[3] In awarding custody of M. to appellee, the court placed emphasis on an alleged stipulation made by appellant and appellee by which they agreed that the children should remain together regardless of who was awarded custody. Both appellant and appellee contend that no such stipulation is of record, and therefore assert that the lower court's reliance on it was error. A review of the record fails to disclose any stipulation entered into by the parties. The lower court's reliance on this purported stipulation was misplaced, and therefore erroneous. See Pa.R.C.P. 201. However, the order of the court below may be affirmed if it was correct for any reason. Commonwealth v. Walton, 483 Pa. 588, 397 A.2d 1179 (1979). Because I would hold that the result reached by the lower court was justified on other grounds, its erroneous reliance on the purported stipulation is of no consequence.
[4] One child is missing from appellant's count.
[5] This is not to imply that a standard is advocated whereby the spaciousness of the facilities provided by each parent is compared, with custody awarded to the parent providing the facility with the greatest square footage. It is maintained, however, that the size and quality of the living quarters available are important factors as they relate to the amount of privacy thereby accorded the child, and to any psychological effects they might have on the child.