Kaye, J.
(dissenting). The Court’s decision, fixing biology[1] as the key to visitation rights, has impact far beyond this particular controversy, one that may affect a wide spectrum of relationships — including those of longtime heterosexual stepparents, "common-law” and nonheterosexual partners such as involved here, and even participants in scientific reproduction procedures. Estimates that more than 15.5 million children do *658 not live with two biological parents, and that as many as 8 to 10 million children are born into families with a gay or lesbian parent, suggest just how widespread the impact may be (see, Polikoff, This Child Does Have Two Mothers: Redefining Parenthood to Meet the Needs of Children in Lesbian-Mother and other Nontraditional Families, 78 Geo LJ 459, 461, n 2 [1990]; Bartlett, Rethinking Parenthood as an Exclusive Status: The Need for Legal Alternatives When the Premise of the Nuclear Family has Failed, 70 Va L Rev 879, 880-881 [1984]; see generally, Developments in the Law — Sexual Orientation and the Law, 102 Harv L Rev 1508, 1629 [1989]).
But the impact of today’s decision falls hardest on the children of those relationships, limiting their opportunity to maintain bonds that may be crucial to their development. The majority’s retreat from the courts’ proper role — its tightening of rules that should in visitation petitions, above all, retain the capacity to take the children’s interests into account— compels this dissent.
In focusing the difference, it is perhaps helpful to begin with what is not at issue. This is not a custody case, but solely a visitation petition. The issue on this appeal is not whether petitioner should actually have visitation rights. Nor is the issue the relationship between Alison D. and Virginia M. Rather, the sole issue is the relationship between Alison D. and A.D.M., in particular whether Alison D.’s petition for visitation should even be considered on its merits. I would conclude that the trial court had jurisdiction to hear the merits of this petition.
The relevant facts are amply described in the Court’s opinion. Most significantly, Virginia M. agrees that, after long cohabitation with Alison D. and before A.D.M.’s conception, it was "explicitly planned that the child would be theirs to raise together.” It is also uncontested that the two shared "financial and emotional preparations” for the birth, and that for several years Alison D. actually filled the role of coparent to A.D.M., both tangibly and intangibly. In all, a parent-child relationship — encouraged or at least condoned by Virginia M. —apparently existed between A.D.M. and Alison D. during the first six years of the child’s life.
While acknowledging that relationship, the Court nonetheless proclaims powerlessness to consider the child’s interest at all, because the word "parent” in the statute imposes an absolute barrier to Alison D.’s petition for visitation. That *659 same conclusion would follow, as the Appellate Division dissenter noted, were the coparenting relationship one of 10 or more years, and irrespective of how close or deep the emotional ties might be between petitioner and child, or how devastating isolation might be to the child. I cannot agree that such a result is mandated by section 70, or any other law.
Domestic Relations Law § 70 provides a mechanism for "either parent” to bring a habeas corpus proceeding to determine a child’s custody. Other State Legislatures, in comparable statutes, have defined "parent” specifically (see, e.g., Cal Civ Code § 7001 [defining parent-child relationship as between "a child and his natural or adoptive parents”]), and that definition has of course bound the courts (see, Nancy S. v Michele G., 228 Cal App 3d 831, 279 Cal Rptr 212 [Mar. 20, 1991] [applying the statutory definition]). Significantly, the Domestic Relations Law contains no such limitation. Indeed, it does not define the term "parent” at all. That remains for the courts to do, as often happens when statutory terms are undefined.
The majority insists, however, that, the word "parent” in this case can only be read to mean biological parent; the response "one fit parent” now forecloses all inquiry into the child’s best interest, even in visitation proceedings. We have not previously taken such a hard line in these matters, but in the absence of express legislative direction have attempted to read otherwise undefined words of the statute so as to effectuate the legislative purposes. The Legislature has made plain an objective in section 70 to promote "the best interest of the child” and the child’s "welfare and happiness.” (Domestic Relations Law § 70.) Those words should not be ignored by us in defining standing for visitation purposes — they have not been in prior case law.
Domestic Relations Law § 70 was amended in 1964 to broaden the category of persons entitled to seek habeas corpus relief (L 1964, ch 564, § 1). Previously, only a husband or wife living within the State, and legally separated from the spouse, had standing to bring such a proceeding. The courts, however, refused to apply the statute so literally. In amending the statute to make domicile of the child the touchstone, and eliminate the separation requirement, the Legislature acted to bring section 70 into conformity with what the courts were already doing (see, Mem of Joint Legis Comm on Matrimonial and Family Laws, 1964 McKinney’s Session Laws of NY, at *660 1880 [amendment deleted "needless limitations which are not, in fact, observed by the Courts”]).
This amendment to bring the statute into line with the practice reflects Supreme Court’s equitable powers that complement the special habeas statute (see, Langerman v Langerman, 303 NY 465, 471; see generally, NY Const, art VI, § 7 [a]). In Finlay v Finlay (240 NY 429, 433), this Court established that where the section 70 writ is denied to the petitioner seeking custody "there would remain his remedy by petition to the chancellor or to the court that has succeeded to the chancellor’s prerogative [and] [n]othing in the habeas corpus act affects that jurisdiction.” In such an action, the Chancellor "may act at the intervention or on the motion of a kinsman * * * but equally he may act at the instance of any one else.” (240 NY, at 434.) Jurisdiction rests on the parens patriae power — concern for the welfare of the child (id.; see also, Matter of Bachman v Mejias, 1 NY2d 575, 581).
As the Court wrote in Matter of Bennett v Jeffreys (40 NY2d 543, 546) — even in recognizing the superior right of a biological parent to the custody of her child — "when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody. Indeed, analysis of the cases reveals a shifting of emphasis rather than a remaking of substance. This shifting reflects more the modern principle that a child is a person, and not a subperson over whom the parent has an absolute possessory interest.”
Apart from imposing upon itself an unnecessarily restrictive definition of "parent,” and apart from turning its back on a tradition of reading of section 70 so as to promote the welfare of the children, in accord with the parens patriae power, the Court also overlooks the significant distinction between visitation and custody proceedings.
While both are of special concern to the State, custody and visitation are significantly different (see, Weiss v Weiss, 52 NY2d 170, 175; Matter of Ronald FF. v Cindy GG., 70 NY2d 141, 144).[2] Custody disputes implicate a parent’s right to rear a child — with the child’s corresponding right to be raised by a parent (see, Matter of Bennett v Jeffreys, 40 NY2d, at 546, *661 supra). Infringement of that right must be based on the fitness —more precisely the lack of fitness — of the custodial parent.
Visitation rights also implicate a right of the custodial parent, but it is the right to choose with whom the child associates (see, Matter of Ronald FF. v Cindy GG., 70 NY2d, at 144, supra). Any burden on the exercise of that right must be based on the child’s overriding need to maintain a particular relationship (see, Weiss v Weiss, 52 NY2d, at 174-175, supra). Logically, the fitness concern present in custody disputes is irrelevant in visitation petitions, where continuing contact with the child rather than severing of a parental tie is in issue. For that reason, we refused to extend the Bennett "extraordinary circumstances” doctrine — which relates to the fitness of the custodial parent — to visitation petitions (Matter of Ronald FF. v Cindy GG., 70 NY2d 141, supra).
The Court now takes the law a step beyond Ronald FF. by establishing the Bennett "extraordinary circumstances” test as the only way to reach the child’s best interest in a section 70 proceeding. In that Ronald FF. determined that extraordinary circumstances are irrelevant in the visitation context, our holding today thus firmly closes the door on all consideration of the child’s best interest in visitation proceedings such as the one before us, unless petitioner is a biological parent.
Of course there must be some limitation on who can petition for visitation. Domestic Relations Law § 70 specifies that the person must be the child’s "parent,” and the law additionally recognizes certain rights of biological and legal parents. Arguments that every dedicated caretaker could sue for visitation if the term "parent” were broadened, or that such action would necessarily effect sweeping change throughout the law, overlook and misportray the Court’s role in defining otherwise undefined statutory terms to effect particular statutory purposes, and to do so narrowly, for those purposes only.
Countless examples of that process may be found in our case law, the Court looking to modern-day realities in giving definition to statutory concepts. (See, e.g., People v Eulo, 63 NY2d 341, 354 [defining "death” for purposes of homicide prosecutions].) Only recently, we defined the term "family” in the eviction provisions of the rent stabilization laws so as to advance the legislative objective, making abundantly clear that the definition was limited to the statute in issue and did not effect a wholesale change in the law (see, Braschi v Stahl Assocs. Co., 74 NY2d 201, 211-213).
*662 In discharging this responsibility, recent decisions from other jurisdictions, for the most part concerning visitation rights of stepparents, are instructive (see, e.g., Gribble v Gribble, 583 P2d 64 [Utah]; Spells v Spells, 250 Pa Super 168, 378 A2d 879). For example in Spells (250 Pa Super, at 172-173, 378 A2d, at 881-882), the court fashioned a test for "parental status” or "in loco parentis” requiring that the petitioner demonstrate actual assumption of the parental role and discharge of parental responsibilities. It should be required that the relationship with the child came into being with the consent of the biological or legal parent, and that the petitioner at least have had joint custody of the child for a significant period of time (see, Rethinking Parenthood as an Exclusive Status, op. cit., 70 Va L Rev, at 945-946). Other factors likely should be added to constitute a test that protects all relevant interests — much as we did in Braschi. Indeed, the criteria described by the Court in Braschi to be applied on a case-by-case basis later became the nucleus of formal standards (see, 9 NYCRR 2520.6).
It is not my intention to spell out a definition but only to point out that it is surely within our competence to do so. It is indeed regrettable that we decline to exercise that authority in this visitation matter, given the explicit statutory objectives, the courts’ power, and the fact that all consideration of the child’s interest is, for the future, otherwise absolutely foreclosed.
I would remand the case to Supreme Court for an exercise of its discretion in determining whether Alison D. stands in loco parentis to A.D.M. and, if so, whether it is in the child’s best interest to allow her the visitation rights she claims.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion; Judge Kaye dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.

. While the opinion speaks of biological and legal parenthood, this Court has not yet passed on the legality of adoption by a second mother.

. The majority’s opinion rests on a fundamental inconsistency. It cannot be that visitation is the same as custody — "a limited form of custody” (majority opn, at 656) — and yet at the same time different from custody in that the "extraordinary circumstances” doctrine is inapplicable (Matter of Ronald FF. v Cindy GG., 70 NY2d 141; see also, Matter of Mark V. v Gale R, 143 Misc 2d 487, 489).