## Norris v. O'Brien

C.P. of Columbia County, no. 169 of 1999.

*David Trathen,* for plaintiff.
*William Kim Hill,* for defendant.

JAMES JR., *J.,* January 22, 2001—Pursuant to a stipulated order dated April 5, 1999, plaintiff and defendant were granted shared physical custody of their minor child Katie Elizabeth Norris, born March 7, 1997. Defendant/mother had physical custody every other weekend, one additional night each week, and other times as the parties agreed. Plaintiff/father had physical custody for the balance of the time. This arrangement was modified by court order dated January 25, 2000, which continued shared physical custody, but modified the time, with each party having physical custody of Katie on alternating weeks.

On June 28, 2000, plaintiff filed a petition to again modify the custody order and to seek primary physical custody of Katie. The special master recommended that the existing arrangement remain the same. Plaintiff filed exceptions. A custody modification hearing was held before the court January 10, 2001. Although defendant did not file a pleading, she proposes that the order be modified granting her primary physical custody of Katie. At the hearing, both parties specifically said that they did not want to continue the present alternating week arrangement. Both parties want Katie to be in a primary environment, particularly since she will be attending preschool in the fall of 2001.

At the hearing, plaintiff's witnesses included plaintiff himself; Candi Norris (plaintiff's present wife); Cindy Neidig (plaintiff's mother); and Nicole Norris (plaintiff's sister). Defendant's witnesses included defendant herself; Amy Kase (defendant's supervisor at work); Trina Yerger (defendant's co-worker); Jackie Curry (defendant's sister); Jennifer Wells (defendant's sister); Edith O'Brien (defendant's stepmother); and Jeremy Young (defendant's present husband).

Plaintiff's exhibits consisted of photographs of his residence, of the children, and of certain toys; Katie's medical records; plaintiff's wife's day-care documents; and informational documents about the Hershey and Millville school districts. Defendant offered no exhibits.

## FINDINGS OF FACT

The court finds that the following facts have been proved:

(1) Plaintiff is Jamie Lee Norris, age 24, born February 5, 1975. He lives at 142 Washington Ave., Hershey, Pennsylvania, in a remodeled farmhouse situate on three or four acres in a rural setting. His wife, Candi Norris, age 28, and her three children (Lee, age 11; Kaitlyn, age 8; and Casey, age 4) also reside in the house.

(2) Defendant is Kimberly O'Brien Young, formerly Kimberly Anne O'Brien, age 27. She resides at 30 Hons Lane, Millville, Pennsylvania, in a three bedroom farmhouse situate on 74 acres in a rural setting. Her husband Jeremy Young, age 20, and her daughter Erin, age 5, also live in the house.

(3) Defendant's son Corey, age 10, has lived primarily with his aunt and uncle for the last seven years as a result of an abusive situation with a former paramour of defendant. The abusive paramour was jailed for the offense. (Defendant was also a victim of the paramour's abuse.) Corey lives with defendant every other weekend. Defendant is attempting to regain full custody of Corey at the end of this school year, although a bond has developed between Corey and his aunt and uncle. Corey's natural father has had no contact with Corey since birth.

(4) Erin's natural father has had no contact with Erin since her birth.

(5) Defendant had a child with her abusive paramour approximately seven years ago. That child was put up for adoption.

(6) Candi Norris' children Lee and Kaitlyn live with their natural father approximately four weeks each summer in West Virginia. Her daughter Casey visits with her natural father approximately every other weekend.

(7) Defendant married Jeremy Young, age 20, on November 25, 2000. Mr. Young and defendant had dated since June 1999 and lived together for some time before their marriage. Mr. Young is a good worker and has a steady job installing computer lines. He works from 8 a.m. to 4 p.m. Monday through Friday, and sometimes on weekends.

(8) Plaintiff married Candi Norris on May 12, 2000. Plaintiff has a steady job as a heating and air conditioning technician. He is a good worker. His hours are normally 8 a.m. to 4:30 p.m. Monday through Friday, and he is on call one weekend each month.

(9) Candi Norris had been a medical assistant and medical secretary for approximately six years until July 2000, when she established her own in-house day-care business. She made the change to accommodate her daughter Casey and also Katie, so they would not have to go to a third-party provider. She has proper facilities to take care of up to seven children plus Casey and Katie.

(10) Katie has a close relationship with Casey as well as with Lee and Kaitlyn. Katie also has a close relationship with her half-sister Erin.

(11) Plaintiff and Candi Norris provide a very beneficially structured environment for Katie and for Candi's other children.

(12) Plaintiff and his wife have also been very attentive to Katie's medical and dental needs. Katie has allergies to pets, dust and mold. Plaintiff normally arranged dental and medical care when the parties lived together and while plaintiff lived in Montour County. Plaintiff is a very solid and responsible parent.

(13) Defendant is employed as a unit secretary at Millville Health Center. She works from 7 a.m. until 3 p.m. Monday through Friday, and a minor amount of overtime. She is a steady and good worker. She is well liked by her fellow workers and by the patients at the health center.

(14) Defendant has many supportive relatives and friends in the Columbia County area.

(15) Despite her obvious personal difficulties in her late teenage years and early twenties, defendant has become a hard worker and relatively stable person. She is very personable and offers her children sincere personal warmth and caring.

(16) Erin goes to preschool and to a day-care center when defendant is at work, as will Katie if defendant has custody during the week.

(17) The parties were not married when Katie was born, but lived together for almost two years after her birth. After they separated, the parties worked well together arranging custody of Katie. Plaintiff had custody a little more than defendant did.

(18) Plaintiff decided to move to Hershey in approximately January 2000. He wanted to live with Candi. His family was from that area, and he believed that job opportunities and the schools were better in the Hershey area.

(19) Since plaintiff moved to Hershey, the parties have exchanged custody weekly. Although the arrangement has provided Katie an opportunity to bond equally with both parents, the arrangement is becoming confusing to her. She is having difficulty relating to who is her fam-

ily, particularly who is her mother. Katie has a difficult time adapting to the custody exchanges each week.

(20) Both parties believe that Katie needs a primary home and more stability, particularly since preschool starts soon.

(21) Both parents have provided Katie with love and affection.

(22) Both parents provide Katie with appropriate discipline.

(23) Both parents have been able to cooperate in developing a strong parental relationship between the other parent and Katie.

(24) All of the witnesses in this case are credible.

(25) Both parents have been significant caregivers.

(26) Both plaintiff and defendant have been loving and caring parents, who sincerely have the best interests of Katie at heart.

## DISCUSSION

The paramount consideration of any child custody proceeding is what is in the best interest and welfare of the child, which includes preserving the welfare of the child's physical, intellectual, and spiritual well being. *Cardamone v. Elshoff,* 442 Pa. Super. 263, 659 A.2d 575 (1995). The court will consider all relevant factors that could affect a child's well being. *Andrews v. Andrews,* 411 Pa. Super. 286, 289, 601 A.2d 352, 353 (1991).

In most respects and at this time, the relevant factors to be considered in custody cases are balanced approximately equally between the parties. They are both fit

parents. Plaintiff and his spouse are clearly more structured and disciplined in their approach to raising children. Defendant could take some pointers. However, defendant may offer a warmer atmosphere that is less likely to confuse Katie. Both parties can provide for the needs of Katie, and both have extended families and friends for support. Both parties have relatively brief marriages at this time, which is a concern for both parties vis-à-vis Katie.

Both parties work and need daycare. Of course, plaintiff's wife can provide in home daycare, which is a plus. However, this daycare will continue for a relatively brief time before Katie starts school. The day-care situation should not control this case.

The parties are both decent individuals. They have cooperated with custody remarkably well, and there is no reason to think that they will not cooperate in the future.

Although not a pure relocation case, we should review the three-prong test under *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990), to determine whether a custodial parent and child may relocate. The three *Gruber* considerations are:

"[(1) T]he court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent. . . .

"[(2) T]he court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it. . . .

"[(3) T]he court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent." *Gruber v. Gruber,* 400 Pa. Super. at 184-85, 583 A.2d at 439.

The *Gruber* analysis is appropriate in shared physical custody cases as part of the overall "best interest of the child" analysis. *Thomas v. Thomas,* 739 A.2d 206, 209 (Pa. Super. 1999). Our case is a shared custody case. The three *Gruber* prongs should be considered. First it is clear that plaintiff did not move from the Columbia-Montour area on a pure whim. He gave it a lot of thought and had good reason to move, *i.e.,* to improve the quality of his life with better job opportunities. Second, plaintiff's motives for the relocation were untainted. Third, substitute custody arrangements have been made and can be made in the future which can continue to foster a loving ongoing relationship with both parents.

One of the biggest considerations in this difficult case is the separation of Katie from her half-sister Erin. Although Katie also has close ties to Casey (her stepsister), there is a strong policy in our law that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible. "This principle [should not be] diluted by the fact that the third child" is a half sister. *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 328, 421 A.2d 157, 160-61 (1980). "Absent compelling reasons to the contrary, the policy of this Commonwealth has been that siblings should be raised together whenever possible. . . . The threshold for this standard is that the evidence must indicate it was

necessary to separate the children and the evidence was forceful in this regard. . . . Without these compelling reasons, the children should be raised together in one household, which permits the continuity and stability necessary for a young child's development." *Ferdinand v. Ferdinand*, 763 A.2d 820, 823-24, (Pa. Super. 2000) (no. 813 MDA 2000), *reargument denied*, December 22, 2000. (citations omitted) There are no compelling reasons to separate Katie and Erin.

After consideration of all of the relevant factors, the court finds that the best interest of the minor child would be served by a custody arrangement that provides for shared legal and physical custody and with primary residence with defendant and significant residential time with plaintiff.

## ORDER

And now, January 22, 2001, it is ordered and decreed as follows:

(1) The parties shall enjoy joint legal custody of their minor child, Katie Elizabeth Norris, born March 7, 1997, and shared physical custody of Katie subject to the physical custody schedule set forth herein.

(2) Defendant shall have physical custody of Katie except during those times when plaintiff shall have physical custody as specified in paragraph three below.

(3) Plaintiff shall have physical custody as follows:

(a) On the first, third, and fourth weekends of each month from 6 p.m. on Friday until 6 p.m. on Sunday.

(b) Every summer from one week after school ends until one week before school resumes. Defendant shall

have physical custody during the summer on the first, third, and fourth weekends of each month from 6 p.m. on Friday until 6 p.m. on Sunday. Each parent shall have physical custody during the summer for an uninterrupted 10-day vacation period with Katie. However, said 10-day period must be utilized in conjunction with and include their Friday to Sunday custody period. Each parent shall give to the other a 30-day written notice as to when the 10-day vacation will occur.

(c) In even numbered years from December 23 at 6 p.m. through December 25 at 2 p.m.; and from December 30 at 6 p.m. until the day before school resumes at 5 p.m. In odd numbered years from December 25 at 2 p.m. through December 30 at 6 p.m.

(d) The Easter vacation shall be shared between the parents as equally as possible, taking into consideration the fact that this vacation may be shortened due to snow make-up days. In even numbered years, plaintiff shall have custody the first half of the vacation and defendant the second half. In odd numbered years defendant shall have custody the first half of the vacation and plaintiff the second half.

(e) At Thanksgiving time (Thursday through Monday), in even numbered years, plaintiff shall exercise custody from noon on Thursday to noon on Saturday. In odd numbered years plaintiff shall exercise custody from noon on Saturday to 6 p.m. on Monday.

(f) Every Memorial Day and weekend, every Labor Day and weekend, and every Fourth of July and weekend.

(g) Every Father's Day from 6 p.m. on Saturday until 6 p.m. on Sunday. (Defendant shall have every Mother's Day from 6 p.m. on Saturday until 6 p.m. on Sunday.)

The holiday schedule shall supercede the regular custody schedule to the extent it conflicts with the regular schedule. The 10-day vacation period shall not supercede weekend custody periods.

(4) Nothing in this order shall be construed to restrict or limit the ability of the parties to agree to additional custody arrangements.

(5) The parties shall equally share all transportation necessary to implement this order. The exchange point shall be the McDonald's Restaurant at the Pine Grove exchange on the east side of Interstate 81.

(6) The parties shall have reasonable telephone contacts with their minor child when she is in the custody of the other party.

(7) The parties shall exchange all information pertaining to the health, education, and welfare of the minor child; including without limitation, report cards; progress reports from school; approval of extraordinary medical and dental treatment; summer school; summer camp; and approval of schools in general, provided that such approval shall not be unreasonably withheld.

(8) The parties shall have equal access to all school and medical records of the minor child, and each shall have the ability to consent to emergency medical treatment when the child is in the custody of such party.

(9) If circumstances from time to time prevent the exercise of physical custody, the parties shall provide one another with timely and reasonable notice as to the existence of such circumstances and an equal amount of make-up physical custody time shall be provided at the earliest mutually agreeable date and time.

(10) The parties shall notify one another by telephone of any serious illness of the child.

(11) In the event of any serious illness of the child, each party shall have the right to visit the child as frequently as he or she desires, consistent with proper medical care.

(12) The term "illness," as used herein, shall mean any disability which confines the child to bed under the direction of a licensed physician for a period in excess of 48 hours.

(13) The parties shall exert reasonable efforts to maintain free access and unhampered contact between the child and each of the parties and to promote a feeling of love and affection between the child and the other party.

(14) The parties shall not harass, molest, or malign each other, or their respective families in the presence of their child.

(15) Neither party shall engage in a pattern or course of conduct designed to interfere with the free and natural development of the child's love and respect for the other party.

(16) If either party intends to relocate from their present residence, he or she shall provide the other party with a minimum of 30 days advance written notice of such relocation to permit modification of the terms and conditions recommended herein, if necessary.

(17) Both parties shall keep the other party informed at all times of their respective addresses and telephone numbers.

(18) Neither party will abuse alcohol while caring for the minor child and each will maintain a safe environment for the child.