J-A11001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.R.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.M.R. | : | |
| | : | |
| | : | No. 135 WDA 2021 |
| v. | : | |
| | : | |
| | : | |
| C.R.B. | : | |
| | : | |
| | : | |
| APPEAL OF: M.M.R. and C.R.B. | : | |
| | : | |

Appeal from the Order Dated December 29, 2020
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): Case No. 10883 of 2019, C.A.

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: JULY 13, 2021**

In this custody matter, the trial court found K.R.R. ("Foster Mother") had *in loco parentis* standing to seek custody of A.A. ("Child") and granted her primary custody. M.M.R. ("Mother") and C.R.B. ("Father") (collectively, "Parents") appealed. We vacate and remand.

Child was born in October 2017. After birth, Mother was in a coma, and unable to care for Child.[1] Father was not identified at the time of the birth.

_____

[1] The record of the dependency proceedings is not part of the certified record in this case. However, the parties and the court do not dispute the procedural

The court granted temporary legal and physical custody of Child in November 2017 to the Lawrence County Children and Youth Services ("CYS"). CYS placed Child in a foster home. Mother asked Foster Mother to provide kindship care and, in June 2018, Child was placed with Foster Mother. In January 2019, the court found Child was not dependent and ordered Child returned to Mother.[2]

In May 2019, CYS filed a new dependency petition, assumed emergency custody, and again placed Child with Foster Mother. In August 2019, the court denied the dependency petition, finding CYS had failed to carry its burden. Child was returned to Mother.

In August 2019, Foster Mother filed a Complaint in Custody stating that Mother and Father are Child's biological parents and that she is Child's cousin. Complaint at ¶¶ 5-7. She alleged that Child resided with her from June 2018 through January 2019 and May 2019 through August 2019 and that Child's "best interest and permanent welfare . . . [would] be served by granting sole legal and primary physical custody" of Child to her. *Id.* at 4-5, 9. Foster Mother claimed that she had standing because her relationship with Child started at Parents' request and with their continuing consent; she had

_____

and factual history, and the hearing transcript contains testimony about certain aspects of the dependency proceedings. We will therefore repeat the history of the dependency case, as the parties and lower court describe it, to give context to the present case.

[2] Father resided with Mother at the time. Father's and Mother's parental rights to two older children have been terminated in a separate proceeding.

assumed and "is willing to assume" responsibility for Child; and Child is "a dependent substantially at risk due to neglect." *Id.* at ¶ 11.

The court entered an interim custody order, on November 15, 2019, awarding legal and primary physical custody to Parents and partial physical custody to Foster Mother. One week later, on November 22, 2019, Foster Mother presented an Emergency Petition for Special Relief. She alleged Parents initially refused to conduct a scheduled custody exchange, Child "suffered from severe diaper rash and neglect" and Child's doctor had told her to take Child to the emergency room. She also stated that Parents had refused to cooperate in seeking medical care for Child. Emergency Petition for Special Relief, filed Nov. 22, 2019, at ¶¶ 4-9. The court granted the petition and awarded sole legal and physical custody to Foster Mother.

Father then filed a preliminary objection to the Complaint, which Mother joined, challenging Foster Mother's standing. The court overruled the preliminary objection, finding Foster Mother had standing under the *in loco parentis* doctrine.[3] A custody trial occurred in August and September 2020, and the court granted Foster Mother sole legal custody and primary physical custody of Child. Parents appealed.

Parents raise the following issues:

> 1. Whether the trial court abused its discretion and committed reversible error by overruling [Parents'] Preliminary Objections to [Foster Mother's] Complaint for Custody because [Foster Mother] does not have standing to

_____

[3] ***See*** Trial Court Opinion, filed Dec. 29. 2020, at 5.

- 3 -

pursue any form of custody pursuant to 23 Pa.C.S.A. §5324 or 23 Pa.C.S.A. §5325?

2. Whether the trial court abused its discretion [and] committed reversible error by overruling [Parents'] Preliminary Objections and failing to dismiss Plaintiff's Complaint for Custody that was filed pursuant to 23 Pa.C.S.A. §5324(3) when [Foster Mother] is not a grandparent to the subject minor child, but instead finding that [Foster Mother] had standing pursuant to 23 Pa.C.S.A. §5324(2) although *in loco parentis* was not specifically raised within the Complaint nor were there factual averments contained within the Complaint establishing the *in loco parentis* factors?

3. Whether the trial court abused its discretion and committed reversible error by overruling [Parents'] Preliminary Objections and granting [Foster Mother] standing to pursue custody of the subject minor child pursuant to 23 Pa.C.S.A. §5324(2) without conducting an evidentiary hearing to determine if [Foster Mother] meets the factors to establish *in loco parentis* status?

4. Whether the trial Court abused its discretion and committed reversible error by overruling [Parents'] Preliminary Objections and finding that the placement of the child with [Foster Mother] as the result of a dependency proceeding initiated by the Lawrence County Children and Youth Services agency and [Foster Mother's] subsequent caretaking of the minor child following such placement as a foster parent provided her with standing to pursue custody pursuant to 23 Pa.C.S.A. §5324(2)?

5. Whether the trial court abused its discretion and committed reversible error by awarding [Foster Mother] primary physical custody and sole legal custody of the minor child to a maternal relative over the natural parents when [Foster Mother] failed to establish by clear and convincing evidence that the best interest and permanent welfare of the children would be served by such an award?

6. Whether the trial court abused its discretion and committed reversible error by misapplying the custody laws and evidentiary rules governing child custody proceedings by permitting a lay witness to testify to matters that required expert opinion, thereby rendering its decision

> manifestly unreasonable and the product of partiality, prejudice, and bias?

Parents' Br. at v-vi.

In their first four issues, Parents challenge the court order overruling the preliminary objection to Foster Mother's standing. Parents argue that there is a "longstanding principle that foster parents do not meet the necessary qualifications to attain the status of *in loco parentis*." Parents' Br. at 3. They note that in finding otherwise, the trial court relied on cases that did not arise following a finding of dependency. They further argue that Foster Mother cannot assert *in loco parentis* standing against their wishes. They state that although Mother suggested Foster Mother as kinship care, it was not because Mother did not want to parent Child, but rather due to CYS's intervention.[4]

"'Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary.'" ***K.W. v. S.L.***, 157 A.3d 498, 504 (Pa. Super. 2017) (quoting ***Rellick-Smith v. Rellick***, 147 A.3d 897, 901 (Pa. Super. 2016)).

The Domestic Relations Code affords limited classes of people standing to seek custody of a child. The statutory categories include parents, grandparents, great-grandparents, and those *in loco parentis* to the child. ***See*** 23 Pa.C.S. § 5324. "The term *in loco parentis* literally means 'in the place of a parent.'" ***K.W.***, 157 A.3d at 504-05 (quoting ***Peters v. Costello***, 891 A.2d

---

[4] Parents also claim that Foster Mother's Complaint did not plead standing under Section 5324(2). We agree with the trial court that Foster Mother's reference to Section 5324(3) in the Complaint was a typographical error.

705, 710 (Pa. 2005)). "A person stands *in loco parentis* with respect to a child when he or she 'assum[es] the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.'" **Id.** at 505 (quoting **Peters**, 891 A.2d at 710). "*[I]n loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of[,] the wishes of a parent." **Id.** (quoting **E.W. v. T.S.**, 916 A.2d 1197, 1205 (Pa. 2007); **See also K.W. v. S.L.**, 157 A.3d 498, 504 (Pa.Super. 2017).

The trial court found Foster Mother had *in loco parentis* standing because Mother had sought her out for kinship placement and Foster Mother's relationship with Child would not have proceeded without Mother's efforts. It stated, "Although it is undoubtedly true that Natural Parents protested the CYS removal of [Child] through the dependency action, it is equally true that the initial effort to bring [Foster Mother] into the case appears to have been coordinated between herself and Mother." **Id.** at 25. The court further found that Foster Mother had discharged parental duties and assumed parental status. It explained that "the facts, as pleaded by her complaint and buttressed by the judicially noted dependency record, established that she had provided full-time care to [Child] for 10 months prior to the Complaint in Custody with some level of consent from Mother." **Id.** at 26.

We disagree and conclude Foster Mother did not have *in loco parentis* standing. Several precedents guide us. **In re Adoption of Crystal D.R.**, 480

A.2d 1146 (Pa.Super. 1984), was a termination case. This Court held that, "with respect to a child entrusted to their care," foster parents lacked *in loco parentis* standing to seek termination. *Id.* at 1147. The Court explained that when a child is in foster care, responsibility for the child's well-being is divided among the child's parents, the child welfare agency, and the foster parents. *Id.* at 1150. However, the foster parents' care for the child is subject to agency supervision, and relevant statutes make clear that the placement is intended to be temporary, with the goal of reuniting the family. *Id.* at 1151.

In view of the statutory and regulatory scheme, the Court determined that the foster parents' relationship with a child placed in their care "is by its very nature subordinate both to the relationship between the agency and the child and to the relationship between the child and child's parents." *Id.* at 1151. The Court thus concluded that the General Assembly did not intend to include foster parents in the statutory provision allowing those standing *in loco parentis* to seek termination, as that would encourage foster parents "to become not supporters but rivals of the child's parents," and give agencies incentive to neglect or abdicate their responsibilities. *Id.* at 1152.

This Court has also held that foster parents lack standing to seek custody of a child where the children and youth agency objects. *See In re Adoption of S.C.P.*, 527 A.2d 1052, 1053 (Pa.Super. 1987) (finding former foster parents lack standing to seek adoption of former foster child where the legal custodian, the child welfare agency, does not consent); *Priester v. Fayette Cnty. Children and Youth Servs.*, 512 A.2d 683, 684 (Pa.Super.

1986) (finding, in case where natural parents were not involved, that former foster parents lacked standing to pursue an action in custody where the legal custodian did not consent). *But cf. Stapleton v. Dauphin County Child Care Service*, 324 A.2d 562, 567 (Pa.Super. 1974) (finding foster parents had standing under the Juvenile Act to challenge the removal of a child from their home because the Act conferred standing to file a petition on "any person").

In *In re G.C.*, the Pennsylvania Supreme Court addressed whether, in dependency proceedings under the Juvenile Act, foster parents had standing to seek custody or contest awards of custody of their foster children. 735 A.2d 1226 (Pa. 1999) (plurality). The trial court there granted a child welfare agency legal custody of a child whom the agency placed with foster parents. The child's grandfather petitioned for custody of the child, and the foster parents countered with a petition to retain physical custody. The trial court denied the foster parents' request. This Court concluded that as foster parents, they lacked standing to seek or contest custody awards concerning their foster children.

The Pennsylvania Supreme Court was evenly divided and thus affirmed. The opinion in support of affirmance concluded "that foster parents lack standing in custody proceedings." *Id.* at 1228. The opinion reviewed prior cases, including *In re Crystal*, and concluded that foster parents lacked standing to seek custody. The opinion explained that, in its view, foster parents and a foster child have a "uniquely limited and subordinate, state-

created, agency-maintained, foster parent/child relationship established through the Legislative scheme. . . ." 735 A.2d at 1230. Although the two opinions in support of reversal would have found standing, they appear to have done so because the issue arose in proceedings under the Juvenile Act and natural parents were not parties to the action. *Id.*, 735 A.2d at 1232 (Nigro, J.) (distinguishing *In re Crystal* on the ground that decision addressed *in loco parentis* status under the Adoption Act, and *In re G.C.* dealt with proceedings under the Juvenile Act); *id.* at 1233-34 (Newman, J., joined by Castille, J.) (concluding that foster parents had standing under the plain language of Section 6351 of the Juvenile Act, which confers standing on "any person").

Guided by these precedents, we conclude the trial court erred in finding Foster Mother had *in loco parentis* standing. Foster Mother's relationship with Child was through the foster care system. Therefore, as in *In re Crystal*, her relationship to Child was governed by statute, designed to be temporary, and was subordinate to both the parents' relationship to child and CYS's relationship to Child. Further, and significantly, Parents did not consent to Foster Mother's role in Child's life. Rather, her relationship with Child arose because of the involvement of CYS. We do not agree that Mother's asking Foster Mother to provide kinship care in the course of dependency proceedings was sufficient to find consent for purposes of *in loco parentis* standing. Mother made the request only because CYS had custody, not because Parents did not want to parent Child.

The cases the trial court cited are readily distinguishable. In **McDonel v. Sohn**, 762 A.2d 1101, 1106 (Pa.Super. 2000), this Court held that a child's aunt and uncle had *in loco parentis* standing to seek custody of the child. There, no children and youth services agency was involved and the child had spent a significant amount of time with the aunt and uncle. Further, the father, who initially denied paternity and was not involved in the care of child in the initial years, did not know of the aunt and uncle's involvement and therefore he "could not have been an obstruction to the [aunt and uncle's] developing relationship with [the child]." **Id.** Further, the mother, who was deceased at the time the aunt and uncle filed the custody petition, had granted the aunt and uncle an *in loco parentis* power of attorney.

In **Cardamone v. Elshoff**, 659 A.2d 575, 577 (Pa.Super. 1995), this Court found a child's aunt had *in loco parentis* standing. There, the child had contacted the aunt and asked to live with her. The Child then resided with the aunt for approximately three years. **Id.** The aunt filed a petition to confirm custody of child, and child's mother filed an emergency petition seeking to regain physical custody. This court concluded the aunt had *in loco parentis* standing because she had "provided . . . food, shelter, [and] clothing and ensured that [the child] received an education" and had "assumed primary parental responsibility" for three years. **Id.** at 582. The court also found no evidence that Mother "was defiant" to the child living with aunt, but, rather, had explicitly consented to leaving the child in the aunt's care. **Id.**

*McDonel* and *Cardamone* did not involve foster parents. Rather, they were cases in which a relative became involved in a child's life and took on a parental role, and the parents explicitly consented to their doing so. Such is not the case here.

We acknowledge the concerns about Parents' ability to care for Child.[5] However, involvement in a child's life as a foster parent is not enough to find *in loco parentis* standing to seek custody.

Parents' last two issues contend that even if Foster Mother had standing, the award of custody to her was improper. As we conclude that Foster Mother did not have standing, we do not reach them.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021

---

[5] The CYS caseworker testified that she likely would have filed a dependency petition if Child had remained in Parents' care. N.T., 8/13/2020, at 104-105.

- 11 -