J-A17042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               :            PENNSYLVANIA
                                                 :
            v.                                       :
                                                 :
                                                 :
AURICE ANDRE ANDREWS            :
                                                 :
               Appellant                    :     No. 2161 EDA 2021

Appeal from the Judgment of Sentence Entered August 24, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000888-2019

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                 **FILED OCTOBER 17, 2022**

      Appellant, Aurice Andre Andrews, appeals from the judgment of sentence imposed after a jury found him guilty of accidents involving damage to an attended vehicle or property and the trial court found him guilty of a summary offense for driving while operating privileges are suspended or revoked.[1]  During his trial, the lower court permitted him to proceed *pro se* and directed his appointed counsel to serve as standby counsel.  On appeal, Appellant challenges the admission of chemical testing results for controlled substances, that were entered via a stipulation, and asserts that the lower court erred by not conducting a proper colloquy prior to denying his request

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3743(a) and 75 Pa.C.S. § 1543(b)(1)(i), respectively.  **See** N.T. 3/11/20, 15-16 (driving while operating privileges are suspended or revoked charge amended prior to trial).

for the appointment of a new attorney before permitting him to proceed *pro se*. Upon careful review, we affirm.

The lower court has summarized the facts presented at trial as follows:

On January 8, 2019, at approximately 12:15 p.m., Officer Brett Cortis ("Ofc. Cortis") of the Pottstown Police Department responded to a report of [a] vehicle accident at the intersection of Hanover and Chestnut Streets in Pottstown, Montgomery County. Upon arrival at the scene, Ofc. Cortis encountered 'hit and run' victim, John Hendersched. Mr. Hendersched immediately advised Ofc. Cortis that [Appellant], who had not stopped after crashing into the rear of Mr. Hendersched's vehicle, had fled eastbound on Chestnut Street in a black SUV, bearing PA plate registration (KXA-2124).

Ofc. Cortis immediately left the scene to pursue [Appellant]. Seconds later, Ofc. Cortis observed what he soon identified as [Appellant's] vehicle, traveling 6-7 blocks ahead of him. Within minutes of speaking with Mr. Hendersched, Ofc. Cortis apprehended [Appellant] some ten blocks away after conducting a vehicle stop of the black Mercury Mountaineer bearing the previously identified PA registration (KXA-2124) driven by [Appellant]. [Appellant's] vehicle had fresh damage to the front passenger side bumper, and broken pieces of plastic and lens on the bumper and within the vehicle's front grill.

Pottstown Police Department's Sergeant Michael Ponto ("Sgt. Ponto") who arrived at the accident scene shortly after Ofc. Cortis's departure, joined Ofc. Cortis minutes later to assist with the traffic stop. Upon initially approaching [Appellant's] driver side window, Ofc. Cortis observed him to be the sole occupant of the vehicle. When asked, [Appellant] identified himself to Ofc. Cortis, but said he did not have his I.D. on him. [Appellant] denied having been involved in an accident, stating instead that he was just coming home from a trip to the store, but could not provide his home address or its location which Ofc. Cortis later learned was located one block east from where he had stopped [Appellant].

Both Ofc. Cortis and Sgt. Pronto observed that [Appellant's] eyes were red and bloodshot, his movements slow and deliberate, he

- 2 -

had difficulty thumbing through his paperwork to locate his registration and proof of insurance, and notably, was only wearing one shoe. Based on their observations, Sgt. Ponto asked [Appellant] to exit his vehicle. While conducting a weapons pat-down for officer safety, [Appellant] was unable to maintain his balance, falling forward and backwards so that Sgt. Ponto repeatedly had to catch him to prevent him from falling down. Sgt. Ponto took [Appellant] into custody, and after transporting him to Pottstown Hospital for a blood draw, Sgt. Ponto returned [Appellant] to the Pottstown Police Department. In searching [Appellant] before placing him in the cellblock, Sgt. Ponto located a black [Ziploc] bag with a white residue in [Appellant's] rear pant's pocket, as well as a partially burnt hand-rolled cigarette (joint), which [Appellant] himself identified as "K2," a commonly used term for synthetic marijuana. Law enforcement further confirmed that, from the time they apprehended him during the traffic stop, until he was searched at the station, [Appellant] was never left unattended, with the exception of a brief period in which [Appellant] was seated in the rear of Sgt. Ponto's patrol vehicle, while pictures for the investigation were taken.

Trial Ct. Op., 1/25/22, 1-3 (footnotes with record citations omitted).

Appellant proceeded to be tried by a jury on March 11-12, 2020. In the addition to the above-referenced offenses, Appellant was charged with knowing or intentional possession of a controlled substance and two counts of possession of drug paraphernalia.[2] Amended Bills of Information, 12/20/19, 1-2.

At the start of the proceedings, the court sought to clarify that Appellant wished to proceed with his appointed counsel and Appellant responded that he was "undecided" about that:

THE COURT: All right. The next thing is, I just want to make clear that you want to move forward with [appointed counsel]

_____

[2] 35 P.S. § 113(a)(16), and 35 P.S. § 113(a)(32), respectively.

representing you. I think that's accurate. I think you told me that you did want to have counsel; correct? And you don't want to represent yourself; is that correct?

THE DEFENDANT: I'm undecided, because actually I just found out that I was having a trial.

N.T. 3/11/20, 6. The court reminded Appellant that he had prior notice of the trial date and Appellant noted that he had met with his counsel on a prior Sunday. *Id.* The court again sought to confirm that Appellant wanted to proceed with his counsel and Appellant gave a non-responsive answer about not feeling "like [he] was ever arrested," alluding to a previously litigated claim. *Id.* The court and Appellant then had an exchange where the court informed Appellant that he needed to cooperate with his attorney and Appellant said that his counsel was not cooperating with him. *Id.* at 7-8. The court assured him that his counsel was a "very seasoned trial attorney" and a "very good lawyer." *Id.* at 8. The court next tried to get Appellant confirm that he would not be disruptive in front of the jury and Appellant tried to discuss a previously rejected challenge to an affidavit of probable cause. *Id.* at 8-12.

After Appellant referred to his attorney as "fresh out of school," his counsel made a motion for the appointment of conflict counsel, noting "that there ha[d] been a breakdown" in his attorney-client relationship and that Appellant was not trusting what he had been telling him. N.T. 3/11/20, 12. The Commonwealth objected based on the timing of the request, on the day that trial would begin, and the prosecutor's stated assumption that Appellant

- 4 -

would have similar issues with another attorney. *Id.* The court denied the request. *Id.* *Voir dire* followed and the Commonwealth opened its case-in-chief with the presentation of Officer Cortis's testimony.

On the second day of the trial, the Commonwealth presented the testimony of Mr. Hendersched, Cynthia Myers, Linda McGinn, and Sergeant Ponto. Ms. Myers was a passenger in Mr. Hendersched's car, along with her twenty-one-year-old daughter and her six-month-old grandson. N.T. 3/12/20, 10. Ms. Ginn was a pedestrian witness who heard the crash, reported Appellant's license plate number to the police, and identified Appellant at trial as the driver of the black SUV at the scene. *Id.* at 33-36.

In between the presentation of testimony from Ms. Myers and Ms. McGinn, Appellant indicated his interest in proceeding *pro se* because he did not feel that his counsel was "representing [him] correctly." N.T. 3/12/20, 14. The court conducted a colloquy with Appellant to ascertain the voluntariness of his request, and his awareness of the responsibilities he would assume by acting as his own counsel as well his sentencing exposure. *Id.* at 14-17. Appellant cited a lack of agreement and communication as his basis for wanting to remove his counsel: "That's what I'm saying, I don't want him. I don't want this man sitting here misrepresenting me. We're not even on the same page. He's making decisions about my life without me even knowing about it." *Id.* at 22. The court denied his request for the appointment of a new attorney and gave him the choice of proceeding *pro se* or with existing counsel. *Id.* at 24-31. After Appellant gave non-responsive answers to the

offered choices, the court resumed the proceedings with counsel remaining in place. *Id.* at 31.

The Commonwealth proceeded to present the testimony of Ms. McGinn and Sergeant Ponto. When it came time for the cross-examination of Sergeant Ponto, Appellant's counsel informed the court that Appellant wished to proceed *pro se*. N.T. 3/12/20, 50-51. The court again conducted a colloquy with Appellant to confirm his understanding of his sentencing exposure. *Id.* at 51-55. The court permitted Appellant to proceed *pro se* and designated his attorney to serve as standby counsel. *Id.* at 56.

At the end of the Commonwealth's case-in-chief, the Commonwealth moved to enter stipulations into the record that Appellant's counsel had agreed to prior to Appellant's decision to proceed *pro se*. N.T. 3/12/20, 75-76. The stipulations addressed the chemical testing results for the partially burnt cigarette and bag that were recovered from Appellant following his arrest and were found to contain synthetic marijuana. *Id.* at 76, 95; Exhibit C-11 (written copy of the stipulations). The court informed Appellant that he was bound by the stipulation agreement that his counsel had already made, and Appellant contested that point. N.T. 3/12/20, 76 ("I don't agree to that. And we did not discuss that. That's the reason why I'm defending myself now. We did not discuss that, I did not agree to that."). The court proposed *sua sponte* declaring a mistrial and holding a new trial at which point Appellant could litigate pre-trial motions and be tried again either while acting *pro se* or proceeding with any retained counsel. *Id.* at 77.

After taking a recess, the court backtracked on its mistrial suggestion and reiterated that Appellant was "bound by the stipulations that [his] counsel entered into when [counsel] was representing" him. N.T. 3/12/20, 82. The court noted Appellant's objection to the stipulation and denied Appellant's subsequent requests for a mistrial. *Id.* at 81, 89. Appellant did not present any evidence.

At the conclusion of the trial, the jury found Appellant guilty of accidents involving damage to an attended vehicle or property and deadlocked on the remaining charges. N.T. 3/12/20, 149-50. The court found Appellant guilty of the remaining charge, the summary count for driving while operating privileges are suspended or revoked. *Id.* at 151. At a deferred sentencing hearing, the court accepted the Commonwealth's recommendation and imposed a statutory minimum sixty-day imprisonment term for the summary offense and no further penalty for the misdemeanor accident conviction. N.T. 8/24/21, 3.

Appellant did not file a post-sentence motion or a timely notice of appeal. Present defense counsel entered his appearance and filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.*, seeking the reinstatement of Appellant's direct appeal rights. Entry of Appearance, 9/30/21, 1; PCRA Petition, 9/30/21, ¶ 5. Counsel acknowledged that Appellant had mailed a request for a notice of appeal to his office on September 21 and 23, 2021, but that he did not receive the request until after the September 23rd deadline for filing a timely notice had elapsed. PCRA

Petition, 9/30/21, ¶ 3-4. The lower court granted the request for reinstatement of Appellant's direct appeal rights and Appellant filed a notice of appeal within thirty days.[3] Order Granting PCRA Relief, 10/6/21, 1; Notice of Appeal, 10/20/21, 1.

Appellant presents the following questions for our review:

I. Did the lower court err in admitting stipulations to chemical testing results where [Appellant] acting as *pro se* counsel refused to stipulate to the results and no stipulation had been entered on the record prior to [Appellant] beginning to represent himself in a *pro se* capacity?

II. Did the lower court err in denying [Appellant's] request for new counsel without first conducting an on-the-record colloquy regarding the reasons for [Appellant's] dissatisfaction with counsel and also questioning counsel regarding the adequacy of his preparation for trial?

Appellant's Brief at 3 (answers of the lower court omitted).

In his first issue, Appellant asserts that the trial court erred by admitting the stipulation concerning the chemical testing results. Appellant's Brief at 11-12. He acknowledges that his trial counsel "came to an oral agreement" with the Commonwealth to enter the stipulation but he asserts that, because the stipulation had not been entered into the evidentiary record by presenting it to the jury prior to him proceeding *pro se*, the court should have sustained his objection. **Id.** When the court denied Appellant's objection, it held that

---

[3] Appellant also timely filed a court-ordered statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Order, 10/20/21; Rule 1925(b) Statement, 11/9/21.

he was bound to honor the agreement that his counsel had made with the Commonwealth concerning the entry of the stipulation. N.T. 3/12/20, 76 ("THE COURT: Mr. Andrews, while you were represented by counsel, these stipulations were agreed to. You're bound by them.").

Appellant argues that the stipulation had "no validity" before it was entered into the trial record. Appellant's Brief at 11. The trial court considers that the stipulation was made prior to trial and that it needed to be honored where the Commonwealth relied on the agreement with defense counsel to its detriment. Trial Op., 1/25/22, 6. In addition, the court advises that the instant claim is moot where the jury was unable to reach a verdict on the charges based on the evidence addressed in the stipulations. *Id.* Appellant argues that the entry of the stipulation could not have been harmless because evidence showing him to be in possession of illegal narcotics would have cast him "in a negative light" and "invariably cause the jury to feel that they had to convict [him] of something." Appellant's Brief at 12.

As this claim pertains to the admission of evidence, we review the record for an abuse of discretion:

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Gboko*, 243 A.3d 247, 249 (Pa. Super. 2020) (citation omitted).

There does not appear to be any dispute that trial counsel, prior to Appellant proceeding *pro se*, agreed to the stipulations at issue. N.T. 3/12/20, 76 ("THE COURT: It's my understanding these stipulations were reached between you and [trial counsel] prior to Mr. Andrews representing himself. Is that accurate? [PROSECUTOR]: That's correct, Your Honor.").[4] The United States Supreme Court has held that there are numerous choices relating to the conduct of trial, and, with respect to choices made by counsel regarding the admission of evidence, the defendant is bound. **See United States v. Gonzalez**, 553 U.S. 242, 248-49 (2008) ("decisions by counsel are generally given effect as to … what agreements to conclude regarding the admission of evidence") (citation omitted).

At the core of his claim, Appellant is asserting that the agreement between his former counsel and the Commonwealth could not be enforced until it was "entered into the record." Appellant's Brief at 12. For this proposition, he cites our decision in **Appel Vending Co. v. 1601 Corp.**, 203 A.2d 812, 814 (Pa. Super. 1964), offering the following quotation: "an oral agreement of counsel will not be considered by the court unless it is noted by the prothonotary, or made in open court, or is admitted." Appellant's Brief at 11. Appellant's quotation is misleading. He removed the following emphasized portions from the quotation without giving this Court any context that he was omitting any of its contents: "In any event an oral agreement of

_____

[4] Trial counsel, still present in court as standby counsel, did not contest this point.

counsel*, **such as is alleged by the garnishee,** *will not be considered by the court unless it is noted by the prothonotary or made in open court **(Pa.R.C.P. No. 201)** or is admitted.*"[5]

The unedited quotation from the **Appel Vending** decision shows that, in civil matters, courts are unable to consider an oral agreement between counsel because of an applicable rule of civil procedure. ***See*** Pa.R.Civ.P. 201 ("Agreements of attorneys relating to the business of the court, shall be in writing, except such agreements at bar as are noted by the prothonotary upon the minutes or by the stenographer on the stenographer's notes.").[6] By misquoting **Appel Vending**, Appellant can be seen as covertly trying to rely on a civil rule of procedure, which has no apparent counterpart in our criminal rules of procedure, to prevail in this appeal in his criminal matter. His reliance on a portion of ***Appel Vending*** applying Pa.R.Civ.P. 201 fails to the support the central point of his argument in this criminal matter which is not governed by the rules of civil procedure.[7]

_____

[5] We note that attorneys in this Commonwealth have an obligation to not knowingly make false statements of law to tribunals pursuant to Rule 3.3(a)(1) of our Rules of Professional Conduct.

[6] The wording of the current version of Pa.R.Civ.P. 201 has essentially remained the same as of the time of ***Appel Vending***. ***See Britton v. Continental Min. & Smelting Corp.***, 76 A.2d 625, 627 (Pa. 1950) (quoting the rule and citing it as Pa.R.C.P. 201).

[7] If we were to hypothetically apply Pa.R.Civ.P. 201 in these contexts, Appellant does not address the fact that the agreed-upon stipulations were ultimately included in a writing that was admitted at trial as Exhibit C-11.

Appellant next cites our child custody decision in *Commonwealth ex rel. Patricia L. F. v. Malbert J. F.*, 420 A.2d 572, 573 n.2 (Pa. Super. 1980), for the holding that "[i]t is [an] err[or] for a court to rely on [a] stipulation that is not of record." Appellant's Brief at 12. Appellant's reliance on that opinion for the offered holding is also misleading. To the extent that it may have been instructive for our review of the instant claim, it is inapposite because it was addressing the fact that a court in the child-custody matter erred by relying on an alleged stipulation that was both not of record and which both parties contested the existence of the alleged stipulation. 420 A.2d at 573 n.2 ("Both parties contest the existence of that stipulation, and indeed, no such stipulation appears on the record. Accordingly, the lower court erred in relying on a stipulation not of record."). Here, the parties do not dispute that the Commonwealth and defense counsel had entered into an agreement to enter the stipulation at issue. Accordingly, Appellant's citation to *Commonwealth ex rel. Patricia L. F. V. Malbert J. F.* does not establish any misapplication of law in the instant case.[8]

Appellant's remaining citations are also of little use for our review. He cites *Metropolitan Life Ins. Co. v. Bodge*, 560 A.2d 175, 179 (Pa. Super.

_____

[8] Additionally, the citation to *Commonwealth ex rel. Patricia L. F. v. Malbert J. F.* has little persuasive value for the instant case because the alleged stipulation addressed in the cited footnote involved a stipulation about child custody and, in those matters in particular, courts are not bound by contractual agreements between parties relating to child custody. *See Commonwealth ex rel. Veihdeffer v. Veihdeffer*, 344 A.2d 613, 614 (1975).

- 12 -

1989), for the holding that a trial court did not err in denying the admission of a "Joint Stipulation of Facts" that was neither agreed to or signed by an opposing party. Appellant's Brief at 12. That holding is inapposite because again there is no dispute in the instant matter that Appellant's former counsel agreed to the stipulation at issue. The relevant question is whether an agreement made by a former attorney could bind a successor attorney, which in this case was Appellant himself after he proceeded *pro se*. Appellant lastly cites a non-controlling decision from another jurisdiction.

Appellant's argument fails to demonstrate an abuse of discretion. He does not provide this Court with any relevant controlling or persuasive Pennsylvania caselaw to determine that the court below misapplied any law or acted unreasonably. He does not point to, and we cannot locate, any pertinent law which allows new counsel, here the Appellant acting *pro se*, to disavow a stipulation agreement made by a former counsel concerning the admission of evidence.

In any event, we see no basis to upset the trial court's finding that prior counsel's stipulation agreement bound Appellant. "A stipulation is a declaration that the fact agreed upon is proven." ***Gboko***, 243 A.3d at 249 (citation omitted). Here, the Commonwealth appeared to agree to the stipulation to avoid the necessity of presenting an additional witness at trial and trial counsel presumably agreed to the stipulation to avoid unnecessarily focusing the jury's attention to issues concerning the controlled substances and drug paraphernalia that were recovered by the police in this case. The

jury's ultimate failure to reach a verdict on those charges was perhaps the result of a strategy in those respects. The decision to enter the stipulation agreement appears to have been in the realm of decisions that may be made by counsel consistent with *United States v. Gonzalez* and which may bind a defendant. The Commonwealth relied on that agreement and was ready to rest its case-in-chief upon the entry of the agreed-upon stipulations. We do not find that the trial court acted unreasonably by enforcing the stipulation agreement when Appellant made a last-minute objection, possibly as a matter of gamesmanship, after the Commonwealth's detrimental reliance and jeopardy had been attached.

In his second issue, Appellant claims that the trial court erred by not conducting a proper colloquy of him and his attorney before the court denied his request for the appointment of a new attorney, prior to the court permitting him to proceed *pro se*. Appellant's Brief at 13-16. He asserts that the court should have conducted a colloquy to ascertain the source of his dissatisfaction with his counsel and the adequacy of his counsel's preparation for the trial. *Id.* at 15.

Pa.R.Crim.P. 122(c) provides that "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." "To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Wright*, 961 A.2d 119, 134 (Pa. 2008). A strained relationship with counsel, lack of faith in counsel's

- 14 -

abilities, or a difference of opinion in trial strategy do not necessarily evidence irreconcilable difference. **Commonwealth v. Floyd**, 937 A.2d 494, 497-98, 500 (Pa. Super. 2007) (collecting cases; affirming finding that disagreement in trial strategy and perceived deficits in counsel's representation did not rise to the level of irreconcilable differences).

Our Supreme Court has explained, "the right to appointed counsel does not include the right to counsel of the defendant's choice." **Commonwealth v. Albrecht**, 720 A.2d 693, 709 (Pa. 1998). "Whether a motion for change of counsel should be granted is within the sound discretion of the trial court and will not be disturbed on appeal absent abuse of discretion." **Commonwealth v. Cook**, 952 A.2d 594, 617 (Pa. 2008) (citation omitted).

To demonstrate that the trial court supposedly conducted inadequate review before the denial of his request for a change of counsel, Appellant cites factors to be considered when a defendant seeks a continuance for the purpose of obtaining new *private* counsel. Appellant's Brief at 13-14, **citing Commonwealth v. Prysock**, 972 A.2d 539 (Pa. Super. 2009). In the instant case, there was no issue raised suggesting that Appellant wished to replace his appointed counsel with retained counsel. The situation presented below was that Appellant expressed dissatisfaction with his appointed counsel and the court rejected the notion that Appellant had a free option of appointed counsel of his choosing. N.T. 3/12/20, 27 ("THE COURT: You've indicated to me that the attorney that has been appointed for you is not an attorney you want. And that's your decision to make, but you're not entitled to pick and

choose who you want.). As a result, Appellant's reliance on **Prysock** is misplaced.

Here, the only relevant question when defendant posed requests to the trial court for a new attorney was whether he had "substantial reasons" pursuant Pa.R.Crim.P. 122(c). Under **Wright**, **supra**, that meant that Appellant needed to demonstrate irreconcilable differences with his appointed counsel. 961 A.2d at 134. Review of his request did not necessarily require a separate hearing. **See, e.g., Commonwealth v. Keaton**, 45 A.3d 1050, 1071 (Pa. 2012) ("Neither the Rules of Criminal Procedure nor our case law requires a defendant be afforded a hearing every time he requests a change of counsel, and we decline to impose such a requirement."). The court was merely required to gather some input from Appellant and his counsel to ascertain whether irreconcilable differences had developed. **Id.** (noting that a trial court was justified in denying a capital murder defendant's motion for a change of court-appointed counsel without an evidentiary hearing where the court, after hearing Keaton's reasons for wanting different counsel and hearing counsel's side of the issue, concluded that Keaton and his counsel disliked working together but that there was no reason that counsel was incapable of zealously representing Keaton; referring to a lack of an abuse of discretion with respect to the court "summarily denying" Keaton's request).

Our review of the record demonstrates that the trial court was aware of the basis for Appellant's dissatisfaction with his appointed counsel. The basis for Appellant's concern and distrust was that he believed that his attorney had

- 16 -

withdrawn a suppression motion concerning the recovery of an additional controlled substance on his person at the time of the car stop without consulting with him. N.T. 3/12/20, 18-19 (Appellant: "On the record, I didn't know that I was given -- with the suppression hearing, I didn't know that my suppression [motion] was waived. I didn't know what. I didn't make that agreement. That's what I'm saying. Seeing him representing me -- you all made an agreement without me even noticing. I didn't know knowing about that … I would like to have my suppression hearing. I never waived that. I never agreed to that."). What transpired was that counsel only withdrew his suppression motion when it became moot after the Commonwealth withdrew the drug possession charge related to the evidence addressed in the motion. N.T. 3/11/20, 75 (trial court's explanation of those circumstances); 3/12/20, 21 (the court recalling the circumstances of the withdrawal of the suppression motion). Moreover, the court heard from counsel about his view that there had been a "breakdown in [his] relationship" with Appellant and a lack of Appellant trusting him. N.T. 3/11/20, 12.

Appellant claims that the trial court "failed to conduct any examination of trial counsel regarding the source of [his] satisfaction, whether it could be reconciled, and the degree of trial counsel's preparation for trial," Appellant's Brief at 15, however, the record plainly shows that the source of his distrust was his confused impression that his counsel had withdrawn a suppression motion without consulting with him. There was no reason for the court to colloquy appointed counsel on the source of the dissatisfaction because

Appellant had already made that clear. N.T. 3/12/20, 18-19; **see also id.** at 22 (Appellant: "I don't want this man sitting here misrepresenting me. We're not even on the same page. *He's making decisions about my life without me even knowing it*.") (emphasis added); **id.** at 25 (Appellant, with respect to a reason for the appointment of a new attorney: "I've given you a reason. This man sat here and made a decision about my life without me even knowing about it. That's enough of a reason. There was a motion being done. And because you all made an agreement -- them two made an agreement. I wasn't aware of that. You think I would have agreed to that?).

To the extent that Appellant expressed his concern about the withdrawn suppression motion, we do not see any reason why the trial court should have then conducted a colloquy with appointed counsel about his preparation for the trial: the stated basis for the dissatisfaction had to do with the withdrawal of a pre-trial suppression motion and had nothing to do with any issue concerning counsel's preparation for the trial. Additionally, there was nothing to reconcile about the withdrawal of the pre-trial motion because it was only withdrawn when it became moot and the trial court already explained those circumstances. **See** N.T. 3/11/20, 75. Appellant did not accept that explanation and that formed the basis for his request for new counsel and his eventual request to proceed *pro se*. **See** N.T. 3/12/20, 29 (Appellant: "If I'm representing myself, I want to have my suppression … Who withdrew it? I did not withdraw my motion.").

In these circumstances, we cannot conclude that the trial court abused its discretion either in the manner in which it considered Appellant's request for new appointed counsel or its denial of the request. The record shows that, in multiple moments during the trial, the court patiently tried to allow Appellant to explain his dissatisfaction with his attorney. Appellant's responses show that he was fixated on the withdrawal of a pre-trial suppression motion even though the motion was only withdrawn because it became moot. Regardless of how the court ruled on Appellant's request for new counsel, the court could not have halted the trial to do anything about the pre-trial suppression motion. While Appellant experienced distrust with his counsel from his misunderstanding of the reason for the withdrawal of his suppression motion, the court obviously did not undertake any additional colloquies during the consideration of the request for new counsel because they did not reveal an irreconcilable difference where Appellant's concerns had nothing to do with counsel's performance or ability to zealously represent Appellant during the trial. *See Commonwealth v. Knapp*, 542 A.2d 546, 549 (Pa. Super. 1988) (indicating that counsel may be rejected only for "good cause shown," and that Knapp failed to establish good cause by merely alleging that his relationship with appointed counsel was "strained"); *Commonwealth v. Johnson*, 454 A.2d 1111, 1115-16 (Pa. Super. 1982) (concluding Johnson was not entitled to new counsel where he merely alleged that he lacked confidence in appointed counsel and did not like counsel's attitude or the manner in which counsel spoke to him).

J-A17042-22

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2022

- 20 -